### Salmon, et al. v. Martin, et al.

(Decided December 5, 1913).

## Appeal from Daviess Circuit Court.

1. Passways—Permissive Use—Easement.—Where the use of a passway has been merely permissive on the part of the owner of the land, no length of time will deprive him of the right to reclaim it; but, where the use has been asserted as a matter of right by the public, and this use has continued uninterruptedly for as much as fifteen years, this uninterrupted use constitutes an easement that the users cannot be deprived of.

2. Passways—Permissive Use.—Where the use of a passway has continued for a long period of time, the burden is on the owner of the land to show that it was merely permissive, and not by right.

3. Highways—Obstruction of—Injunction.—One who uses a public highway cannot enjoin its obstruction unless he is able to show a special injury to himself; but where land which lies adjacent to a passway which is necessary for the owner's use, such use of the passway is in the nature of an appurtenant to the land, and gives the owner the right to enjoin the obstruction of the passway.

4. Passways.—Where the users of a passway adjoining a woodland went through the woods for a short distance, selecting the way they thought most direct and convenient, leaving the general course of the passway unchanged, the right of passway remained unchanged, as originally acquired.

5.  Passways—Obstruction of—Right of Chancellor to Define.—
    Where a passway ran, in part, through a woodland, and the users
    deflected from the passway for a short distance to suit their con-
    venience, the chancellor had the right, in an action to enjoin the
    obstruction of the original passway, to define the passway by
    metes and bounds. Such action on the part of the chancellor is
    not the establishment of a public road; it is only defining, with
    certainty, the limits of the existing passway.

6.  Finding of Chancellor.—Where the evidence is contradictory and
    the mind is left in doubt, a finding of facts by the chancellor
    will not be disturbed.

LITTLE & SLACK for appellants.

C. W. WELLS and W. FOSTER HAYES for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This action was brought by Martin and Yeiser
against Salmon and his tenant, Tanner, to compel them
to remove a fence which they had erected so as to ob-
struct a passway 36 feet wide, and to recover $201.00
damages therefor. The court granted the relief asked,
and required the defendants to leave an unobstructed
passway 22 feet wide at its western end, and at least 20
feet wide at a point five hundred feet east thereof. It,
however, dismissed plaintiffs' claim for damages. From
that judgment all parties appeal; the plaintiffs appeal-
ing from so much of the judgment as restricts the pass-
way to a width of 22 feet, and dismisses their claim for
damages.

1.  The passway in question is about one mile in
length, and extends from the Greenbrier and Utica Road
on the west, to the Greenbrier and Masonville Road on
the east.

Beginning on the west, and on the south side of the
passway, Salmon owns 100 acres, which fronts about
1,600 feet upon the passway; adjoining Salmon on the
east, Brown owns 38 acres; then comes Yeiser's 65 acres,
which is followed by Wilson Bennett's tract. Upon the
north side of the passway Lee Bennett's tract lies on
the west and opposite the Salmon tract; while Martin's
19-acre tract lies immediately east of Lee Bennett's
tract, and is opposite the Brown tract and the Salmon
tract.

Salmon bought from the Allen heirs in 1904, while
the appellees, Martin and Yeiser, acquired their re-
spective tracts of land in 1910.

As early as 1874, a fence was built by Allen along about one-half of the north line of the Allen tract, now owned by Salmon, and in about 1899 Allen built the remainder of the fence, carrying it to the northwest corner of the present Salmon tract.

Before the fence was completed along the north line of the Allen tract in 1899, travelers would make a short cut of from 100 to 200 feet in length through the woods which covered the northwest portion of the Allen tract. This departure from the regular road or passway was caused sometimes by muddy roads, and at other times for mere convenience, since it was a shorter route to the road. As the fence was originally built, the passway at its western extremity was 36 feet wide; but in 1911 Salmon erected a barbed wire fence 27 feet north of the original fence, thus leaving a passway of only 9 feet along the northern boundary of the old passway. This is the obstruction which the appellees sought to have removed by this suit.

The weight of the evidence shows that the road or passway has existed for 30 years or more, although all the fences upon either side of the road have not been built for so long a time. Bennett has lived in the neighborhood all of his life, and testifies that he assisted in building the fence on the south side of what is now his land, and the north line of the passway, twenty years ago, when he was only ten years old, and that the road has been located where it now is, for at least 25 years.

Martin says he has known the road for 30 years, and has been familiar with it for 28 years; while Wimp, who sold the 65-acre tract to Yeiser, and was formerly a considerable land owner in this neighborhood, says the passway has been a regular public passway and neighborhood road since 1874.

Wiggins lived in the neighborhood, and has known the passway since 1876. Other witnesses fix the length of the use at from thirteen to thirty years, the weight of the proof favoring the longer period.

The law governing cases of this character has been well stated in the late case of Wray v. Brown, 155 Ky., 761, as follows:

"The general rule, however, has been time and again laid down that where the use of a passway has been merely permissive on the part of the owner of the land, no length of time will deprive him of the right to reclaim it; but, on the other hand, where the use has been asserted as a matter of right by the public, and

this use has continued uninterrupted for as much as fifteen years, this uninterrupted use constitutes an easement that the users cannot be deprived of. It has further been ruled that where the use has continued for a long period of time, the burden is on the owner of the land to show that it was merely permissive.''

Unquestionably the weight of the evidence sustains the appellees' contention, that the passway has existed for at least 30 years, and probably longer. This long continued use raised the presumption of a grant, which appellants wholly failed to rebut. The passway did not extend across the land of another, but followed the dividing line between the farms upon either side thereof. The chancellor properly found that the passway existed.

2. Appellants insist, however, that appellees were not entitled to the relief sought, because they had not shown any special injury to themselves on account of the obstruction to the highway. It will be readily admitted that one who uses a public highway cannot enjoin its obstruction unless he is able to show a special injury to himself, and that when he shows a special injury he is entitled to relief, not primarily because a public highway has been obstructed, but because of the special and peculiar damages he has sustained.

As an illustration of this rule, it has been said that if one fells a tree across a public highway, a traveler cannot bring an action to require the offending person to remove the tree, unless he has incurred some special damage, such as an injury to himself or his property, in passing over or around the fallen tree.

But the case at bar comes clearly within the rule which allows the individual to sue, since it has been fully established that the appellees have an interest in the passway, and have been injured by its obstruction.

Their farms abut upon the highway which they have long used as the most convenient way, and, indeed, of necessity, to get to the two public roads upon either side thereof.

A similar question arose in Bohne v. Blankenship, 25 Ky. L. R., 1646, 77 S. W., 919, where it was said:

"It is also claimed that appellants, owners of an adjacent property, had no such particular interest as warranted their suit for relief against the maintenance of a public nuisance by injunction. But appellants have an interest in the free and unobstructed use of the passway beyond that of the public generally. The way in question was dedicated by the former owner when he

divided the original tract of land into lots for sale, intending thereby clearly to afford a way of outlet from appellant's lot. Their use of the passway is in the nature of an appurtenant to their lot, the obstruction of which gives them a right of action for relief by injunction.''

The fact that the passway had been dedicated in the Bohne case, while it is claimed in the case at bar by prescription, in no way affects the right of the property owner to maintain an action for the obstruction of the alleged passway. It is the special injury inflicted upon the plaintiff by the obstruction of a passway which is appurtenant to his farm, and not the manner in which he acquired the passway, that gives him the right to enjoin the obstruction.

3. Appellants further contend the evidence fails to show that any fixed route was established or claimed, and that it only shows that several roads have been used in traveling through the unenclosed woodland at the northwest corner of the Allen tract, as best suited the convenience of the travelers, without obtaining or asking permission, or making any claim of right, and that such use can never ripen into a rightful use contrary to the owner's will. To state it in their own language, appellants assert that no use of a roadway over the land of the owner can ever ripen into a rightful use unless a fixed route has been used for 15 years under a claim of right to its use.

The question of how a passway may be acquired over unenclosed woodland was considered in Wray v. Brown, *supra,* where the court said:

''The route over which the public traveled in going across this land, except at the points where it left the two public roads, was changed from time to time as conditions made it advisable. The land was not in cultivation and so it was a matter of little consequence where the line of travel went, and persons who crossed this land went through the woods any way they wanted to go, selecting the way that they thought most accessible. As is always the case in travel of this kind when a way is marked through a woods or unenclosed field the travel will follow the marked way until it becomes muddy or obstructed, and then a new route close by will be followed. But subject to these changes in the location of the route, which were made from time to time, the general course of travel through the woodland was the same.''

And such is the case here. The general course of the passway was not changed; it was not abandoned, obstructed or fenced off in any way; travelers merely deflected their course over the passway through the woods, whenever it suited their convenience or comfort in traveling.

See, also, Hansford v. Berry, 95 Ky., 56; Talbott v. Thorn, 91 Ky., 417, and Smith v. Pennington, 122 Ky., 355.

The fact that travelers made a slight deflection from the passway for their own convenience, while the passway still retained its original outline, will not affect the general principles governing passway cases. This passway was over a mile in length, connecting two main, public thoroughfares; had been in existence for 30 or 40 years, and retained its original location, even though travelers would leave it for an inconsiderable distance at its western end and go through the woods. This practice did not deprive the users of their right to the existing passway.

4. Finally, appellants contend that the circuit judge undertook to establish a public road or passway, while his only power was to adjudge the existence of a road or passway that had been previously established. This criticism is based upon the language of the judgment, declaring that the passway must be at least 22 feet wide at Salmon's northwest corner, and at least 20 feet wide five hundred feet east of said corner. This western five hundred feet of the passway was the portion thereof that had been obstructed by Salmon's new fence, in 1911. The original passway as left by Allen in 1899, when he built the original fence in front of the woodland, was 36 feet wide at its western end, and about 20 feet wide at the point five hundred feet east thereof where Salmon's new fence began. It will be seen, therefore, that appellants have not been required to keep this passway any wider than it was originally, at any point of it; on the contrary, at its western end it has been reduced from 36 feet to 22 feet to appellants' advantage, while at the eastern end of the obstruction it is no wider than it was before. Obviously, therefore, the appellants cannot complain of this feature of the judgment.

Moreover, the court did not undertake to establish a public road or passway in the sense that it undertook to create a new road or passway where none existed before. On the contrary, the judgment declared in express terms, that the plaintiffs, Martin and Yeiser,

"have a right to the free and unobstructed use of a passway along the land described in the petition, extending eastwardly and westwardly between the lands of the plaintiff, Martin, and one Lee Bennett on the north, and the lands of the defendant, Salmon, and one L. A. Brown and the plaintiff, Yeiser, on the south;" and, for the purpose of giving certainty to the passway which then existed, the court merely defined its width, which was less than the width of the passway as originally laid out. This the court had the right to do; otherwise, its judgment would have been defective for want of certainty, and would have led to endless confusion.

5. Upon the cross-appeal it is sufficient to say that the evidence being contradictory, the finding of the chancellor will not be disturbed, where the mind is left in doubt. Byassee v. Evans, 143 Ky., 415; Wathen v. Wathen, 149 Ky., 505; Bond v. Bond, 150 Ky., 392.

Judgment affirmed upon both appeal and cross-appeal.