## Husband, et al. v. Cotton.

(Decided September 26, 1916.)

### Appeal from Spencer Circuit Court.

1. Highways—Dedication of Land for Public Road—Right of Public to Use.—Where land has been dedicated by the owner as the right-of-way for a public road, and the dedication has been accepted by the county and the neighbors jointly constructing the road upon the highway as dedicated, the right of the public to use the road without hindrance from the owner of the burthened estate is complete.

2. Highways—Obstruction—Who May Bring Action For.—The general rule is that a private person can bring an action to abate the unlawful obstruction of a public way only when he has sustained special damage thereby, different not merely in degree, but in kind, from that suffered by the community at large.

3. Highways—Obstruction—Nuisance.—The obstruction of a highway which is a direct route leading from one's property, so as to compel him to take a circuitous route to reach it, is such special injury to the land owner as to entitle him to maintain a suit to abate the nuisance.

SAMUEL K. BAIRD for appellants.

WILLIS, TODD & BOND for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing.

Early in 1905 the plaintiff, J. W. Husband, and fifteen other land owners in Spencer county signed the following agreement:

"We, the undersigned, do hereby agree to give the right-of-way, 30 feet wide, over our lands for the construction of the Little Mt. and Van Buren turnpike, without any consideration; and, we further agree that said turnpike company may use the rock on our lands for the construction of said pike free of any charge; said rock to be moved at season of the year when it will do least damage to our premises."

For the purpose of constructing the proposed turnpike, McGee, Husband and Goodwin, three of the land owners who had signed the agreement above set forth, organized the Little Mount & Van Buren Turnpike Road Company on July 6, 1905, by executing articles of incorporation, in the usual way. The capital stock of

the corporation was fixed at $4,000.00, represented by 160 shares of $25.00 each; and the third article recited that the business to be transacted by the corporation should be the construction of a turnpike road between designated points, and by a specified route.

The fifth article set forth the names of thirty-three stockholders and their respective stock subscriptions. Many of these subscribers for stock, but not all of them, had signed the original land owners' agreement, donating the right-of-way.

The sixth article provided that the corporation should commence business on September 1, 1905, and continue for five years.

The seventh clause provided for the officers usual in such cases; the eighth limited the company's indebtedness to $2,000.00; and the ninth exempted the private property of the stockholders from liability for corporate debts.

The appellee, Richard Cotton, signed the land owners' agreement, donating the right-of-way, and subscribed for four shares of stock in the corporation.

By a written contract made on November 2, 1907, the Little Mount & Van Buren Turnpike Company employed Cotton to construct certain designated portions of the proposed turnpike, at the rate of $1,000.00 per mile, to be paid by the company. The county had agreed to contribute to the expense of constructing the turnpike to the extent of $500.00 per mile; and, the turnpike company's contract with Cotton provided that 75 per cent. of its liability to Cotton should be paid as the county received each one-quarter mile of constructed road, and the remainder was to be paid when the contract should be completed and the road received by the county.

Under this contract Cotton constructed 226 rods of the road, for which he was entitled to receive $707.67. The county paid Cotton $377.82, which was all, or more than all, of the county's proportion of the debt. This sum paid by the county, when added to the sums paid by the turnpike company, and charging Cotton with his stock subscription of $100.00, made a total credit of $512.33, leaving a balance of $195.34 due Cotton. Other contractors built the remaining portions of the road, which was about six miles long.

About one-third of the 226 rods of road constructed by Cotton was upon the right-of-way donated by Cot-

ton; the remaining two-thirds was on the land of other farmers. The county accepted Cotton's work and paid him in full for its share thereof, as above stated; but the turnpike company refused to accept the work as having been completed according to the specifications of the contract, claiming that the work was defective in some six or seven minor respects.

Upon the failure of Cotton and the turnpike company to effect a settlement, Cotton enclosed that portion of the road which he had constructed upon his own land—about fifty-eight rods in length—by putting gates across either end thereof; and, it has so remained closed and in Cotton's possession for the past seven years.

On August 2, 1914, the appellant, J. W. Husband, and ten of the signers of the land owners' right-of-way agreement brought this action against Cotton, seeking the enforcement of said contract and praying for a mandatory injunction requiring Cotton to open that portion of the turnpike which had been constructed over his land.

To this petition Cotton demurred, specially, upon the ground that the Spencer Circuit Court was without jurisdiction of the matter set up in the petition; and he also filed a general demurrer to the petition.

The court overruled both demurrers, whereupon Cotton filed an answer, which is substantially a traverse of the allegations of the petition; admitting, however, that he retained possession and control of that portion of the road which had been constructed upon his land, and declaring that he purposed to retain control of it until he had been paid $195.34, the balance due him.

Upon a trial, the court dismissed the petition, and the plaintiffs appealed.

Cotton insists that the appellants have no cause of action; and, that if any cause of action exists, it is in the county and not in the appellants, who are suing as individuals. In support of this contention counsel for Cotton state in their brief that he filed a special demurrer upon the ground that the plaintiffs had no right to sue. In this, however, counsel are mistaken, since the special demurrer raised only the question of the jurisdiction of the Spencer circuit court, which is an entirely different ground of special demurrer. See Civil Code, section 92, subsections 1 and 2. The only question raised by the special demurrer, was the jurisdiction of the court.

over the subject of the action; and, as that court clearly had jurisdiction of the subject matter, the special demurrer was properly overruled.

The disposition of the general demurrer and the case upon the merits presents a question of more difficulty.

The pleadings and the proof show without contradiction, that the road was constructed according to specifications provided by the county; that the county contributed to its cost in consideration of the agreement of the turnpike company that the road should be surrendered to the county as and for a public highway, upon its completion; that the county has paid Cotton all it owed him; and that the entire road has been accepted by the county, and treated as a public highway by allotting hands to work it, since 1908. It had not, however, been able to take possession of the fifty-eight rods in controversy, or work that portion of the road, on account of Cotton's hostile attitude.

The turnpike company is not claiming any interest in the road, and manifests no concern over this controversy. The right-of-way agreement was not only a valid contract, but it is now an executed contract.

By its terms, the contract dedicated the fifty-eight rods of the road in question to the public use as a highway, and the dedication has been accepted by the construction of the contemplated road, in accordance with the intention and purpose of all the interested parties.

The title to the right-of-way has passed from all the owners of the land. Cotton has no greater interest in the fifty-eight rods of road located upon his farm, than he has in a like proportion of the road located upon the land of some other donor of the right-of-way. He has as much right to hold any other portion of the road constructed by him, as he has to hold this fifty-eight rods. His debt of $195.34 is the unsecured obligation of the turnpike company, and is collectible like other simple debts.

The claim urgently pressed in the proof but not relied upon in the answer, to the effect that the turnpike company paid all the other contractors, is without funds, and has quit business, is wholly irrelevant.

In "holding the road for his money," to use his own language, Cotton is obstructing a public highway; and his defense to this action to abate the obstruction is, that the county only can complain. We do not so understand

the law. The fact that the county as the owner of the highway may complain, does not necessarily prevent the appellants from also complaining. As a general rule a private person can bring an action to abate the unlawful obstruction of a public way only when he has sustained special damage thereby, different not merely in degree, but in kind, from that suffered by the community at large. 37 Cyc. 250.

The record shows that the defendant, Cotton, has obstructed this highway in such a way as to require the plaintiffs, who are land owners in the immediate vicinity, to travel by a circuitous route. It is not made to appear how near the lands of these plaintiffs lie to the obstructed portion of the road, although it does appear that in their ordinary travel the plaintiffs are required to go by a circuitous route and over an inconvenient and hilly dirt road, while they could travel upon the turnpike through Cotton's land except for his unlawful obstruction thereof. This state of facts presents several interesting legal propositions.

The first question that presents itself is, Does the fact that one is prevented by an unlawful obstruction from using a highway cause him a special damage which will sustain an action by him against the wrongdoer? Usually, a traveler upon a highway does not suffer special damage sufficient to support a private action, by reason of an obstruction in the highway which merely causes delay in his journey or compels him to take a more circuitous route, or deprive him of his journey altogether, the injury being to all who attempt to use the highway. Schall v. Nusbaum, 56 Md. 512; Baier v. Schermerhorn, 96 Wis. 372.

And, it has been held that an obstruction of a road not upon or adjoining plaintiff's land, but between his land and places to and from which he wishes to travel over his road, which prevented his using the same, does not occasion him such special injury that would authorize him to maintain an action to abate the obstruction. San Jose Ranch Co. v. Brooks, 74 Cal. 463; Atwood v. Partree, 56 Conn. 80; Storm v. Barger, 43 Ill. App. 173.

The special injury which an individual must suffer in order to allow him to maintain an action for obstructing a highway, must be different not merely in degree, but in kind, from that suffered by the public generally; and, the fact that one who has very frequent occasion

to use a highway is obliged to use a longer route because of an obstruction, does not constitute such special damage. Crook v. Pitcher, 61 Md. 510; Hortshorn v. Redding, 3 Allen 501; Jacksonville T. & K. W. R. R. Co. v. Thompson, 34 Fla. 346, 26 L. R. A. 410; Sohn v. Cambern, 106 Ind. 302.

It is not always easy to ascertain whether an obstruction constitutes a purely public nuisance, or whether there is a special injury inflicted. In many cases a slight addition in the way of trouble or expense when taken in connection with a mere deviation of the route, has been held to be an injury special to the person experiencing the trouble and expense.

Thus, in Pierce v. Dart, 7 Cow. 609, it was held that delay and time spent in removing an obstruction from a road constituted such a sufficient special damage and injury as would support a private action; and, in Anne Arundel County v. Watts, 111 Md. 353, a contractor was held to have suffered special damage where the defendant's failure to repair a bridge on the highway prevented its use, and compelled the plaintiff to transport by hand-cars on a railroad, at large expense, materials to be used for construction work, there being no other highway between the points.

Again, in Sholin v. Skamania Boom Co., 56 Wash. 305, 28 L. R. A. (N. S.) 1053, it was held that one having a contract with the federal government to carry mail over a certain route six times a week, who was compelled to take a circuitous route because of the negligent destruction of a bridge, suffered such a special injury and damage as would give him a right of action against the one through whose negligence the bridge was destroyed.

And, it has been held that the obstruction of a public road which afforded the only approach to property thereon, used for business or other purposes, constituted a special injury to the owner, which he could abate by action. Cushing-Wetmore Co. v. Gray, 152 Cal. 118, 125 Am. St. Rep. 47; Stricker v. Hillis, 15 Idaho 709; Brown v. Toronto N. R. Co., 26 U. C. C. P. 206; Fossion v. Landry, 123 Ind. 136; Miller v. Schenck, 78 Ia. 372; Hayden v. Stewart, 71 Kan. 11; Gardner v. Stroever, 89 Cal. 26; Ross v. Thompson, 78 Ind. 90.

Furthermore, the rule requiring a special injury in order for the individual to maintain an action, is satis-

fied where the obstruction in the highway prevents access to property, except by a circuitous route.

Thus, in Sloss-Sheffield Steel & Iron Co. v. Johnson, 147 Ala. 384, 8 L. R. A. (N. S.) 226, it was held that an obstruction of the direct route between one's property and a neighboring city, so as to compel him to take a circuitous route to reach it, was such a special injury as to entitle him to maintain a suit to abate the nuisance, an action at law for damages being adequate.

The weight of authority is in accord with the rule announced in Sloss-Sheffield Steel & Iron Co. v. Johnson, *supra*. In cases of that character the property owner suffers a special or peculiar injury different from that suffered by the general public, sufficient to entitle him to maintain an action against the person causing or maintaining the obstruction, either for damages or for an injunction to abate the nuisance.

The courts of Iowa, New York, Missouri, Tennessee, Indiana, Maine, Pennsylvania, New Jersey, Maryland, and England sustain the view taken by the Alabama Supreme Court. See Young v. Rothrock, 121 Iowa 588; Wakeman v. Wilbur, 147 N. Y. 657; Sheety v. Union Press Brick Works, 25 Mo. App. 527; Hill v. Hoffman (Tenn. Ch. App.) 58 S. W. 929; O'Brien v. Central Iron & Steel Co., 158 Ind. 218, 57 L. R. A. 508, 92 Am. St. Rep. 305; Brown v. Watson, 47 Me. 161, 74 Am. Dec. 482; Knowles v. Pa. R. R. Co. 175 Pa. 623, 52 Am. St. Rep. 860; Ryerson v. Norris Canal & Bkg. Co., 69 N. J. L. 505; Bembe v. Anne Arundel County, 94 Md. 321, 57 L. R. A. 279; Spencer v. London & B. R. Co., 8 Sim. 198, 7 L. J. Ch. N. S. 281.

On the other hand, in Nebraska, Illinois, Massachusetts, Minnesota, Kansas and Wisconsin, it has been held that neither an action for damages nor one for an injunction to abate the nuisance, would lie at the suit of a private citizen for such an obstruction of a public highway. George v. Peckham (Neb.), 103 N. W. 664; Guttery v. Glenn, 201 Ill. 275; Willard v. Cambridge, 3 Allen 574; Shero v. Carey, 35 Minn. 423; Barton v. Mangus 93 Kan. 719, L. R. A. 1915 D. 142; Zettel v. West Bend, 79 Wisc. 316, 24 Am. St. Rep. 715.

The majority rule above announced, permitting the property owner to sue when the highway or street leading to his property has been obstructed, has repeatedly been recognized by this court. Lexington & Ohio R. R.

Co. v. Applegate, 8 Dana, 289; Transylvania University v. City of Lexington, 3 B. M. 27; Gargan v. L. N. A. & C. Ry. Co., 89 Ky. 212, 6 L. R. A. 340; Bannon v. Murphy, 18 Ky. L. R. 989, 38 S. W. 889; Bourbon Stock Yards Co. v. Woolley, 25 Ky. L. R. 477, 76 S. W. 28; Bohne v. Blankenship, 25 Ky. L. R. 1645, 77 S. W. 919; Salmon v. Martin, 156 Ky. 312.

And, this rule is especially applicable where the entire highway or street has been appropriated, as in this case. L. & N. R. R. Co. v. Sonne, 21 Ky. L. R. 848, 53 S. W. 274.

In the Transylvania University case, *supra,* the court said:

"Every owner of ground on any street in Lexington, has a right, as inviolable as it is indisputable, to the common and unobstructed use of the contiguous highway, so far as it may be necessary for affording him certain incidental easements and services, and a convenient outlet to other streets. And of this right, the legislature cannot deprive him, without his consent, or a just compensation in money. The extent of this appurtenant right, depending on circumstances, may not, in a particular case, be easily definable with mathematical precision. As far as it exists, however, it partakes of the character of private property, and is therefore protected by the fundamental law, as property. But it cannot, as to each proprietor of ground, be co-extensive with all the streets and alleys of the city. As a private right, it must, like that of vicinage, be limited by its own nature and end; that is, chiefly by the necessity of convenient access to, and outlet from the ground of each proprietor."

The language just quoted was cited with approval in the Gargan case, *supra,* the court adding this comment:

"This right, therefore, is not to be determined by the mere fact as to whether the property affected by the obstruction borders immediately on that part of the street obstructed, but has the owner been deprived of convenient access to and outlet from his ground, and 'beyond such general limit, as to each proprietor of ground in the city, the streets are altogether public highways, and subject like other public roads to alteration,' etc."

In Bannon v. Murphy, *supra,* it was held that the owner of property abutting on a street or alley suffered an injury peculiar to himself by the closing of one end thereof so that egress from that direction over his property to other streets was cut off (notwithstanding it was a public nuisance), and entitled him to redress by action.

In that case, Bannon and Mrs. Murphy owned adjoining lots which fronted upon an alley running through the middle of the block, and Bannon built an obstruction across the alley which prevented Mrs. Murphy's exit southwardly, but left her with an easy exit northwardly.

In sustaining Mrs. Murphy's judgment for damages, the court said:

"But it is contended that, inasmuch as appellee has an outlet from the rear of her property northward by way of the connecting alley and the twenty-foot alley running between Thirteenth and Fourteenth streets; and, further, as the appellee did not live on the property, and suffered no personal inconvenience from the obstruction to the alley, the court should have instructed the jury. that the measure of damages, if any had been suffered, was the diminution of the rental value during the period of the obstruction. It is further objected that the petition sets forth no specific damage which resulted to appellee; but, in the case of Gargan v. L., N. A. & C. Ry. Co. (11 Ky. Law Rep., 492), it was held that the stopping up of one end of a street or alley gave to the owner of property bordering thereon a right of action for damages, greater or less, according to the circumstances of the case.

"We are of opinion that the owner of land abutting upon a street or alley, one end of which is obstructed so that he cannot have egress from his property to other streets in that direction, has suffered an injury peculiar to himself by reason of the public nuisance, and is entitled to nominal damages upon that fact alone being made evident to the jury."

In the Woolley case, Woolley owned several lots lying on and adjacent to Bickel avenue, between Main and Market streets, in Louisville. The Stockyards Company wrongfully erected buildings and other obstructions across Bickel avenue, at Market street; whereupon Woolley brought his action for damages and for an injunction, to compel the company to remove the obstruc-

tion. For its principal defense, the company contended that Woolley had not been especially damaged; that his property was injured no more than the public generally was injured, and for that reason it denied his right to maintain the action, which, if it existed at all, it contended was in the city. In fact, it appeared that the city had brought an action to remove the obstruction, and that action was pleaded in bar of Woolley's right to maintain his action.

In answer to this contention by the appellant, the court said:

"We are of the opinion that the proof shows that the appellee was specially and peculiarly interfered with and damaged by reason of the nuisance and obstruction referred to, and under the law he clearly had the right to maintain this action for the removal thereof independently of the action of the city."

The court recognized the general rule which requires an individual seeking relief against a public nuisance to show an injury distinct from that suffered by the general public; and cited Dulaney v. L. & N. R. R. Co., 100 Ky. 628, and the Cosby case in 10 Bush 291, in support of that doctrine. But it further quoted the following language from L. & N. R. R. Co. v. Sonne, 21 Ky. L. R. 848, 53 S. W. 274:

"It is, however, distinctly held in those cases that when the street is sought to be wholly appropriated and that, too, without municipal or other authority, private individuals may sustain their action. In this case we think either the city or these property owners, or both, might bring the suit to prevent the exclusive appropriation complained of."

In Bohne v. Blankenship, *supra,* the court said:

"We are of opinion that after land has been dedicated by the owner to the use of the public as a highway, and the dedication has been accepted by or on behalf of the public, as has been done in this case, the right of the public to use it without hindrance from the owner of the burthened estate is complete. It will not do to say that, if the public authorities fail to keep a road in proper repair, the owner of the adjacent premises may appropriate it to his private use, even temporarily. The public lose none of their rights, once acquired, to use a highway merely because some public servant has omitted to do his duty in keeping the way in repair.

"It is also claimed that appellants, owners of an adjacent property, had no such particular interest as warranted their suit for relief against the maintenance of a public nuisance by injunction. But appellants have an interest in the free and unobstructed use of the passway beyond that of the public ·generally. The way in question was dedicated by the former owner when he divided the original tract of land into lots for sale, intending thereby clearly to afford a way of outlet from appellant's lot. Their use of the passway is in the nature of an appurtenant to their lot, the obstruction of which gives them a right of action for relief by injunction."

Salmon v. Martin, 156 Ky. 312, is to the same effect.

It will thus be seen that while this court recognizes the general rule that a mere traveler must show some injury greater than a mere inconvenience suffered by being required to take a more circuitous route before he can abate a public nuisance, it also recognizes the rule, established by the weight of authority, that where a property owner, by reason of an obstruction in a public street or highway, is compelled to take a circuitous route in order to reach his property he suffers a special or peculiar injury different from that suffered by the general public, and may maintain his action to have the obstruction removed.

The facts of this case bring it squarely within the rule. Some of the plaintiffs, and probably all of them, own property abutting upon the highway which Cotton has obstructed; all of them are compelled to take circuitous routes to reach their properties; and, under the rule above announced they may maintain an action requiring him to remove the obstruction.

Judgment reversed with instructions to the chancellor to set aside the judgment dismissing the action, and to grant the prayer of the petition.