# Cranley v. Boyd County et al.

(Decided Dec. 15, 1936.)

J. S. FULLERTON and S. S. WILLIS for appellant.

LeWRIGHT BROWNING and THOMAS BURCHETT for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and reversing in part.

Formerly United States Highway No. 23 ran out of Ashland as Winchester avenue on the north of, adjoining and parallel with, the tracks of the Chesapeake & Ohio Railway Company, until it reached the city limits, where it turned south at almost right angles and crossed the railroad tracks at grade. It then immediately turned and continued west on the south of the railway right of way. At this second turn there is a road coming into the main highway from the southeast from Westwood. The appellant, Rhoda Cranley, owns 2½ acres of land at the junction. Her northern boundary line extends to the railway right of way, hence embraces the highway; and her eastern line extends across and 40 or 50 feet beyond the Westwood road to the city limits of Ashland. Where the main highway first turns to cross the tracks, as above described, a road comes into it from an industrial plant, where about 3,000 men are employed. For several years the appellant had conducted some kind of business on her premises (not disclosed in the record), and enjoyed considerable patronage.

In order to abolish this railroad grade crossing, and for other imperative reasons, the main highway was relocated within and beyond the limits of Ashland. It consists in part of a large viaduct. See City of Ashland v. Queen, 254 Ky. 329, 71 S. W. (2d) 650. The new location west of the viaduct is south of and parallel with the railroad, and, after intersecting the Westwood road, runs by and through the south side of appellant's property. After the new road was completed, the county court of Boyd County in an ex parte proceeding ordered that the grade crossing above described be abandoned and closed, and the county road engineer was directed to close the same and prevent its further use for travel. Thereupon effective barricades were erected by the county across the old highway on both sides of the railroad. The company then took up the paving on either side of and between its tracks. This resulted in cutting off the road north of the railroad and travel to and from the industrial plant from appellant's property. There

had been a public crossing here for more than thirty years. The old highway south of the tracks and abutting the property is paved and remains open to the public for travel. The storehouse is also close to, but not upon the new highway. A sketch better shows the situation.

This suit was brought by the appellant against Boyd County and the Chesapeake & Ohio Railway Company to recover damages to her property by reason of the closing of the road where it crossed the tracks. The facts which the plaintiff could prove were stipulated. Among them are that she was not a party to the court proceeding in which the road was ordered closed; that she protested against its being obstructed and closed; and that the value of her property was depreciated 50 per cent., the difference immediately before and afterward being $5,000. The property was adaptable and suitable for the business conducted therein, and its access from the old route No. 23 over the crossing enabled the plaintiff and her tenants to conduct a profitable business there. Before the opening of the new road and the closing of the crossing, a great many people passed by the property and patronized the appellant. After the road was closed, the volume of traffic was diverted to the new road and the desirability of the property was practically destroyed. Another element entering into

the damage is that jitney busses would bring passengers to the city limits to plaintiff's property on the old road and take on passengers there, which they do not do now.

The trial court peremptorily instructed the jury to return a verdict for the defendants. The appeal is prosecuted from the judgment rendered on that verdict.

There were two reasons assigned by the court for his ruling. One is that the damage suffered by the plaintiff by the closing of the road was general; that there was no actual taking or invasion of the plaintiff's property or interference with her ingress and egress, and the depreciation in value occasioned by the diversion of traffic was such as would be common to every one living on the road, and not special in its nature. The other ground is that the plaintiff had waived any claim for damages, or rather had received compensation therefor.

The directed verdict for the railway company was proper, as it did not close the road. It was done by the county road engineer at the instance of Boyd County alone. The railway company did not remove the paving until afterward.

Not as an exception to the rule of sovereign immunity of a county from liability for torts, but as a constitutional requirement, though a negation, is the rule that a county is legally answerable for trespass in the taking or injuring of a citizen's property. It arises from the absolute terms of section 13 of the Constitution of Kentucky, declaring that no man's property shall be taken or applied to a public use without his consent, and without just compensation being paid him, and of section 242, providing that those corporations or individuals invested with the privilege of taking private property for public use shall make just compensation for property "taken, injured or destroyed by them." The interpretation and application of these provisions, in relation to counties, since Layman v. Beeler, 113 Ky. 221, 67 S. W. 995, 24 Ky. Law Rep. 174 (as previously applied to cities), has been that they must respond and make compensation to the owner of property actually appropriated, or of property abutting upon roads and highways which has been injured or damaged in a manner regarded as a taking. Thus in City of Ashland v. Queen, supra, it was held that Boyd County was answerable in damages for injury to property resulting

from the erection of a viaduct which is a part of the relocated highway involved in this suit.

This leads us to the proposition whether the closing of the road which formed the basis of the case at bar resulted in such injury to plaintiff's property as is embraced within the provisions of section 242 of the Constitution. Although the barrier across the road was 2 or 3 feet from the property line within the railroad right of way, it is a specious postulate to say appellant's property did not abut upon the closed segment.

The discontinuance of this crossing was for the public good (sections 4356f and 4356z-1 et seq., Kentucky Statutes), and the public good very frequently involves individual and sectional injury, so for general injuries or those which operate indirectly from the public improvement the law allows the citizens no compensation. That is part of the price one pays for the protection and privilege of government. Therefore the general weight of authority in requiring compensation to an owner of private property for a taking or damage under similar constitutional provisions is that the damage suffered must be to continguous property and the direct and immediate consequence of the act complained of. Recovery cannot be had for remote or contingent injury. Nor will compensation be required where a change in a road results merely in personal inconvenience or injury, such as to trade or business by diverting traffic, or compels a more circuitous route of access. That is damnum absque injuria. 13 R. C. L. 73; Jameson v. L. & N. R. R. Co., 176 Ky. 654, 197 S. W. 386; Davis v. City of Paducah, 213 Ky. 407, 281 S. W. 158; York v. C. & O. Ry. Co., 240 Ky. 114, 41 S. W. (2d) 668; Cram v. Laconia, 71 N. H. 41, 51 A. 635, 57 L. R. A. 282. But in this jurisdiction, where a portion of a public way is discontinued, recovery is allowed for diminution in the market value of property where it is adjacent to the place of closing. This is in recognition of a vested right to the easement, and an easement is property. But, beyond the limits of contiguity with the property, the owner's rights in the easement are only those of a member of the public at large. Transylvania University v. City of Lexington, 42 Ky. (3 B. Mon.) 25, 27, 38 Am. Dec. 173; Gargan v. L., N. A. & C. Ry. Co., 89 Ky. 212, 12 S. W. 259, 11 Ky. Law Rep. 489, 6 L. R. A. 340; Bannon v. Murphy, 38 S. W. 889, 18 Ky. Law Rep. 989; Stein v. C. & O. Ry. Co., 132 Ky. 322, 116 S. W. 733;

Husband v. Cotton, 171 Ky. 177, 188 S. W. 380, L. R. A. 1917A, 1150; Illinois Central R. Co. v. Ward, 237 Ky. 478, 35 S. W. (2d) 863.

This case is ruled by Henderson v. City of Lexington, 132 Ky. 390, 111 S. W. 318, 319, 321, 33 Ky. Law Rep. 703, 22 L. R. A. (N. S.) 20. Henderson owned property cornering on Water street and an alley. The street was occupied almost entirely by railroad tracks. A viaduct was built along the line of the alley extending from High to Main street, over Water street and the tracks. The city closed the alley where it crossed the tracks and Water street and a portion north of the crossing. One of the barriers was built at the corner of Henderson's property. The sketch published in the opinion shows the situation was almost like that in the case at bar. Damages in the sum of $3,500 were recovered by Henderson of the city, but he deemed it insufficient and appealed. In the course of the opinion it is said:

"It is admitted that, the closing of a public street, alley, or highway is a taking of private property within the meaning of these constitutional provisions, and that compensation must be made to the abutting owners, and, further, conceded that the closing must be necessary for public purposes. Indeed, these two principles are too well settled to need more than the mere citation of the authorities that support them."

The court made it clear that the only persons who could recover compensation under such circumstances are "those whose property abuts upon or adjoins the street, alley, or highway proposed to be closed." It was held that the measure of damages submitted in the instruction was more favorable to the plaintiff than was proper, and that the correct criterion was the difference in the market value of the whole property. It was further stated:

"In the case before us the injury was to the whole property. None of it was, accurately speaking, taken. The only injury consisted in depriving the property of the full use of an adjacent alley; and, while this was in the meaning of the Constitution a taking, yet the damage done was susceptible of being fairly estimated upon the basis of the injury done to the market value of the property.

'And what we have said upon this point must be accepted as our understanding of the law controlling cases presenting questions like the one under consideration.''

The existence of the new road as affording access to the property does not bar recovery for the loss of the easement in the old, but it is relevant evidence as affecting the amount of depreciation in value. Golden v. L. & N. R. Co., 228 Ky. 134, 14 S. W. (2d) 379.

We recognize the adaptability of property for business purposes and its proximity to a growing city as being a proper element to be considered in assessing compensation for taking part of it for a public purpose. Chicago, St. L. & N. O. Ry. Co. v. Rottgering, 83 S. W. 584, 26 Ky. Law Rep. 1167. It is to be recognized in the instant case that the damages to be allowed are not in consequence of the diversion of traffic merely—it is the diminution in market value through the taking of an easement in an adjacent road. The diversion is an incidence or consequence of that taking. It is a matter of evidence to be considered, even as would the availability to the trading public be regarded in fixing the value of the lot in the principal retail district of a city. Should a street on which such lot is located be permanently closed, even for so worthy or imperative a reason as in this case, no one could doubt that the element of diversion of traffic from the property ought to be considered in awarding compensation.

We are of opinion, therefore, that the evidence of the plaintiff's witnesses shows that there was a special damage to plaintiff's property direct and immediate, differing in kind and not merely in degree from that which might have been sustained by the general public when this portion of the highway was vacated. The case, therefore, should have been submitted to the jury unless the other ground for the trial court's ruling was proper.

The plaintiff conveyed to the county a right of way for the new road over the south portion of her line ''in consideration of the benefits to be derived from the improvement of a public road leading from Ashland to Russell.'' It is alleged in the county's answer, and not denied, that the grantor was paid $500 for this right of way. It was stipulated in the deed that the grantor ''waives all present, past and future damages that has.

576

accrued or may accrue by reason of the building or construction of the proposed road to any or all adjacent property of the first parties to the right of way conveyed herein." We have construed this clause in other deeds of this character to embrace injury to property resulting from the construction of the road. Breathitt County v. Hudson, 265 Ky. 21, 95 S. W. (2d) 1132, and cases cited therein. But this suit is not for any injury to the property arising from the construction or the manner of construction of the new highway. Its existence undoubtedly caused the closing of the grade crossing. But it must be regarded only as incidental to the abandonment of that part of the old road which resulted in injury to plaintiff's property. The proximate cause of the damage was the closing of the old road, and not the construction of the new. We conclude, therefore, that the damages to be recovered were not embraced in the waiver of the claims stipulated in the deed.

Wherefore the judgment as to the Chesapeake & Ohio Railway Company is affirmed, and as to Boyd County it is reversed.

Whole court sitting.