**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

v.

**W. R. FANCHER et al., Appellees.**

Court of Appeals of Kentucky.

May 7, 1965.

Robert F. Matthews, Atty. Gen., Wm. A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Richard H. Peek, Paducah, for appellant.

Holland G. Bryan, Paducah, for appellees.

HILL, Judge.

This is an appeal from a judgment of $10,000 for 6.52 acres of land taken, and $2,780 for damages to the remainder of appellees' property.

Listed in appellant's brief are the following arguments:

"I. The court committed prejudicial error in failing to exclude testimony of damages because of limitation of access.

"II. The court committed prejudicial error in failing to exclude damages because of circuity of travel.

"III. The trial court committed prejudicial error by permitting testimony of appellees' witness who testified that he did not know what was meant by 'Fair Market Value,' which testimony was incompetent and had no probative value."

The tract of land sought is to be used for relocation of U.S. Highways 62, 93 and 641 around the town of Kuttawa. By Kuttawa we mean the new city which officially came into existence November 22, 1961, and replaced the old town of Kuttawa which will be flooded by Barkley Dam. Before the taking of this land, the appellees owned what they considered to be a 20-acre tract of land with the usual improvements thereon which they had occupied since 1936 as their residence and on which they did light farming. The highway engineers say the tract contained 26.5 acres. After the taking, appellees will have a 3.8-acre tract on the north side of the new highway and 16.18 acres on the south side. We shall refer to the new highway as No. 641. The residence and other buildings on the land are on the south side and there is a general north slope all the way across the farm. The construction of the new highway necessitates a cut of approximately 300 feet in length, ranging in depth from 2.5 to 11 feet; the remainder of the road consists of a fill ranging from 0 to 13 feet. Before the construction of the highway, the appellees traveled an old WPA road known as the Ross Ferry Road. However, before the construction, appellees were required to travel over adjoining land now owned by the new town of Kuttawa in order to get to the Ross Ferry Road.

Before the taking, appellees' property was bounded on the north side by the Ross Ferry Road, a distance of 1175 feet; after the taking only 775 feet fronted or joined this old road.

The corporate limits of the town of Kuttawa extend up to the appellees' eastern boundary line. Very recently, grading and draining operations by the promoters of a shopping center on the land adjoining appellees' property have obstructed their use of the former access to the Ross Ferry Road. It is not shown the appellant was in any way responsible for this obstruction.

First, we discuss the contention of appellant that certain testimony pertaining to in-

terference with appellees' access should have been stricken.

It should be noted that although some of the witnesses referred to the new highway, U.S. 641, as a "limited" access road, it is not such a road in the present meaning of the phrase. Appellees are provided an approach to the new highway, both from their 16.18-acre remaining tract, and from their 3.5-acre tract on the north side of the highway. Yet, in order for appellees to get from their large tract to the small one they must travel 700 feet to a cross-over and back 700 feet to where the approach leads off to the smaller tract.

In Commonwealth of Kentucky, Department of Highways v. Carlisle, Ky., 363 S.W. 2d 104 (1962), this Court decided that "the only access right the landowner has is a right of reasonable access to the highway system." Also in Commonwealth of Kentucky, Department of Highways v. Raybourne, Ky., 364 S.W.2d 814 (1963), this Court, in discussing access as an element of damages, said:

"This was not a valid element of damage because, there being reasonable access to the old highway, the land owners had no property right of access to the new road."

See also:

Department of Highways, Commonwealth of Kentucky v. Jackson, 302 S.W.2d 373 (1957); Commonwealth of Kentucky, Department of Highways v. Herndon, Ky., 378 S.W.2d 620 (1964); Commonwealth of Kentucky, Department of Highways v. Denny, Ky., 385 S.W.2d 776 (1964); Commonwealth of Kentucky, Department of Highways v. Roberts, Ky., 388 S.W.2d 604 (decided March 26, 1965); and Jennings v. Commonwealth of Kentucky, Department of Highways, Ky., 388 S.W.2d 133.

We quote from Denny, supra:

" * * * The rationale of the admitted rule of the Jackson case, supra, is that the enhancement in value of land attributable to the mere convenience of the routes of travel which it enjoys is something that does not inure to the landowner as property. The same rule is applicable in the case at bar."

Following this rule, we said in Jennings v. Commonwealth, Department of Highways:

"The appellants' land will have the same access after the condemnation that it had before, which access was adequate for the use to which the land was being devoted (farming). The state did not condemn or take any property right of access."

Appellant contends the appellees' evidence is permeated with the element of loss of access. Appellee counters that the idea of access was injected by "tricky" questions which counsel for appellant "fires" at every witness. Let us see.

"Q—Go right ahead with your explanation on the damages.

"A—The fact is I damaged it $200.00 an acre because it could have been developed as one tract of land, now, it will have to be developed as two tracts. The additional expense involved in the roads, he will have to build and it is going to be greater. He had the right of access to the WPA road anywhere along there that he wanted to go in and out and now the rest of his land, the 16 acres—well, the 20 acres left on the south side of the new road has no access to the Ross Ferry Road, except through this little—well, honestly when I was down there, I couldn't see any access. Now, they may have built one since, but now down there the other day, they had not given him any access.

"Q—And so you based it on the fact that they were cut in two and loss of access and the fill in front of it?

"A—Right.

"Q—In other words, you are saying he had been damaged because he has got no way to get from this tract to this tract and from this tract to this tract (pointing out same on exhibit)?

"A—I am saying my damage is based on the fact that his farm is broken into two pieces, that his 20 acres, his 26 acres, is now broken into two pieces and that before it could have been developed as one tract. It would have been worth more money that way. Now, it would have to be developed, the 4 acres that is left on the Ross Ferry Road will have to be developed separately from the 16 acres that is left on the other side.

"Q—What price did you put on those 4 acres?

"A—Same value I put on the other.

"Q—And you reached that damage because he can't get to it?

"A—I said he can't get back and forth.

"Q—And that is why you put that damage on it?

"A—Yes, sir, one reason.

"Q—What were some of the others?

"A—The other reason is the fill which—well, it is all connected in with the fact that he can't freely go anywhere on his land that he wants to go."

Appellee testified the value of the 6.52-acre tract was $14,960 and the damage to the 3.8-acre tract was $23,050. Appellant's witnesses fixed the value of land taken at $3,000 and $3300, respectively. They found no damages to the remainder. They based their testimony on comparable sales of $375 and $400 per acre. In fact, the land adjoining appellees' property sold to the new city for $400 per acre.

Appellees' witness, Milliken, fixed the value of land taken at $7,824 and damages to remainder at $4,950. With respect to the element of access, Milliken said:

"Q—Now, let's get to the damages, Mr. Milliken. On the $7,824.00 we won't take that up. On the damages to the remainder, just tell the jury how you reached that.

"A—All right, sir, on the approximately 4 acres I valued it $1200.-00 per acre, since it is cut off from the remainder of Mr. Fancher's land and has limited access to the new 641.

"Q—Did it ever have access to 641?

"A—641 wasn't there, no."

Bill Williams, another of appellees' witnesses, fixed damages to the remainder at $3,000. While he did not specify the element of access, we think it is implied in his testimony.

Appellees' witness, Chumbler, fixed the damage to the remaining 3.8 acres at $7,775 and considered the loss of access.

■ We have concluded this element or factor threading through the testimony of appellees' witnesses was improper and prejudicial to the appellant, and that appellant is entitled to a new trial. On such a new trial, should there be one, we should point out that in Commonwealth, Department of Highways v. Shaw et al., Ky., 390 S.W. 2d 161 (decided today) the manner of saving the question for appeal in regard to evidence containing improper elements is specifically defined.

■ The second ground for reversal complains of evidence based on "circuity of travel." This is an improper factor. See Cranley v. Boyd County et al., 266 Ky. 569, 99 S.W.2d 737 (1936). Upon proper objection on another trial, the court should not allow the witnesses to use this factor in arriving at values.

**168**

■ The third and final ground urged by appellant for reversal complains of the competency of evidence of witnesses who admitted they did not know the meaning of "market value." As we have many times observed in such a situation, lay witnesses cannot be expected to give a legal definition of "fair market value." It is common practice for one of the attorneys or the court to define for a prospective witness the meaning of fair market value. The testimony of these witnesses clearly indicates that they had had considerable experience in real estate transactions, especially in this locality, and that they showed considerable common sense and practicality concerning the subject about which they testified. We cannot agree that this testimony should have been taken from the jury. Commonwealth, Department of Highways v. Citizens Ice & Fuel Company, Ky., 365 S.W.2d 113 (1963).

The judgment is reversed with directions to grant appellant a new trial.