**CITY OF LOUISVILLE et al., Appellants,**

**v.**

**Pernie L. KERR et al., Appellees.**

Court of Appeals of Kentucky.

May 20, 1966.

as applicable here, Standiford Field abuts on the west side of "old" Grade Lane for its entire length. The airport boundary runs along Grade Lane for some distance and then runs in an easterly direction from Grade Lane along the north side of appellees' property. Thus, appellees' property is bounded by Standiford Field on the north and (across "old" Grade Lane) on the west. Immediately south of appellees' property, Tuberose Avenue runs in an easterly direction from "old" Grade Lane. "New" Grade Lane springs from the easterly side of "old" Grade Lane at a point south of Tuberose Avenue and runs north for some distance, then it turns west and rejoins "old" Grade Lane north of Standiford Field. Tuberose Avenue runs from "old" Grade Lane to "new" Grade Lane on the south of appellees' property.

"New" Grade Lane was built by cooperative efforts of the City, the Fiscal Court of Jefferson County, the Federal Aviation Agency, and the Kentucky Department of Highways at a cost of $475,000.

Eugene H. Alvey, Shrader R. Miller, James W. Stites, Kennedy Helm, Jr., Louisville, for appellants.

Herman E. Frick, Louisville, for appellees.

HILL, Judge.

This is an appeal from a judgment refusing to close a portion of "old" Grade Lane bordering and outside the city limits of the City of Louisville in a suit brought by the City pursuant to KRS 93.360. The area sought to be closed is desired for the extension of runway 11–29 of Standiford Field. Jurisdiction over territory outside the city is claimed under KRS Chapter 100. Defendants, appellees here, reside outside the city limits but within the "block" containing that portion of "old" Grade Lane to be closed.

"Old" Grade Lane runs, generally, in a north-south direction, passing through the easterly end of Standiford Field. So far

Land preparation and paving of the extension are estimated to cost $1,500,000 and were well under way at the time of the trial of this case in circuit court. In addition, the Louisville and Jefferson County Air Board has acquired a strip approximately 400 feet wide and 3,000 feet long across the Kentucky Turnpike from the end of the runway and cleared it of some seventy-five residences to provide a clear zone for the approach to the runway. The approximate cost of this acquisition was $1,000,000.

So far as is applicable here, KRS 93.360 provides:

"(3) If all defendants are competent to act for themselves and consent in writing to the closing prayed for, the court shall render a decree accordingly, but without this consent the court shall hear proof made by the parties, and if satisfied from the evidence that the closing would be beneficial to the city and not injurious to any party not consenting, shall render a decree closing the street or alley."

The appellees raised the question in the circuit court that notice of the proposed closing required by the statute was not given, and apparently it was not. The judgment appealed from found as a matter of fact that the closing would be beneficial to the City but also found it would be "injurious" to appellees. The judgment enjoined the closing of the Lane "until such time as all the provisions of KRS of Chapter 100 have been complied with." All parties agree that provisions of Chapter 100 have been complied with subsequent to the judgment, and the injunctive portion of the judgment has dissolved by its own terms. Inasmuch as appellees do not now argue the question of notice and the public agencies have expended large sums of money in execution of the plan of extension, we shall examine only the evidence pertaining to the claimed injurious consequences to the appellees.

It is admitted by all parties that the proper parties have filed condemnation proceedings to acquire the identical property involved here. A judgment in the condemnation case has been entered although appellees are not parties in that proceeding. Had they been, the question on this appeal would now be moot. In addition, appellees contend their egress and ingress have been impaired, in that they must travel about 1,800 feet farther after the closing of the Lane in question; that fire fighting equipment will be required to travel a greater distance to get to their property; and that the closing of the Lane will result in the obstruction of some ditches that drain the surface water from the area of their homes.

It may be fairly inferred from the contentions of both parties that appellees will have to travel about 1,800 feet farther than before. A dry run was made by the fire department which indicated it required thirty seconds more to travel the new route, but it is said by appellees the dry run was not a true test due to the disturbed condition of "old" Grade Lane pavement after construction was done on the extension of the run-way. The evidence relative to interference of the drainage of surface water was not convincing or substantial. The ditches were closed at the time of the trial, but it is not shown any substantial surface water will be diverted onto appellees' property after completion of the runway. So, boiled down to essentials, the evidence concerning the "injuries" to appellees relates only to their "access" to the outside world, which brings us to the subsidiary question: *Was there an injury to the right of access of appellees within the meaning of KRS 93.360?*

First, we should examine the nature of the right of access. The right of access, or ingress if you choose, of landowners along a city street is considered by this court to be identical to the right of landowners to the public ways system. Cf. Department of Highways v. Jackson, Ky., 302 S.W.2d 373 (1957) wherein it is stated: "We hereby abolish the distinction, and declare that the rule governing city streets shall be the same as that herein stated for county roads." In a long line of cases, we have held that the landowner cannot complain so long as he has a reasonable access. Cf. Ex Parte Commonwealth, Ky., 291 S.W.2d 814; the Jackson case, supra; Commonwealth v. Carlisle, Ky., 363 S.W.2d 104 (1962); Commonwealth v. Raybourne, Ky., 364 S.W.2d 814 (1963); Commonwealth v. Slusher, Ky., 371 S.W.2d 851 (1963); Commonwealth Department of Highways, v. Fancher, Ky., 390 S.W.2d 164 (1965); and Commonwealth Department of Highways, v. Herndon, 378 S.W.2d 620 (1964).

In the light of the foregoing rule of reasonable access, we conclude from the evidence in the present case that the closing of the Lane in question will result in no injury to appellees within the meaning of KRS 93.360, and that they have not been deprived of "reasonable access" to the "public ways system."

Appellees rely heavily on Gargan v. Louisville, N. A. & C. R. Co., 89 Ky. 212, 12 S.W. 259, 6 L.R.A. 340, but we think

Gargan, so far as it is favorable to the position of appellees, is modified by Jackson, supra, although it is not listed among the opinions as having been overruled by Jackson.

The judgment is reversed with directions to enter judgment for appellants.