# Transylvania University *vs* City of Lexington.

CHANCERY.

3m 25 | 89 220
3m 25 | 90 52
3bm 25 | f129 128
3bm 25 | 132 401 | 132 409

ERROR TO THE FAYETTE CIRCUIT.

*Public Highways. Easements, &c.*

*Case* 8.

CHIEF JUSTICE ROBERTSON delivered the opinion of the Court.

*September* 10.

Case stated.

THE grounds of *Transylvania*, surrounded by open streets, were also formerly divided by Third street, which once separated that portion of the now continuous lawn, on which the buildings of the preparatory department

stand, from the more elevated site of the College edifice. In 1831, prior to the erection of the latter structure, the Trustees of the University obtained from the Trustees of the then town of Lexington, their consent to the occlusion of so much of said street as divided the College grounds, with the proviso, that it should be again opened "*whenever, in the opinion* of (the) *Board* (of the Trustees of Lexington) *the interest of the town* (should) *require it to be so opened.*" It was accordingly closed, and the College edifice was then erected on the highest point of an area of unbroken continuity.

To ratify and establish the said agreement for closing a portion of Third street, the Legislature of Kentucky, in 1835, enacted the following statute:

"WHEREAS, it hath been represented to the present General Assembly, that to connect the grounds belonging to Transylvania University, in the city of Lexington, that so much of Second street as passes between the lot on which Morrison College stands, and the lot on which the present and former buildings of Transylvania University were erected, should be closed and discontinued; and for the purpose that the Trustees of said city hath given consent that the same shall be so closed, and that in pursuance of such agreement between the Trustees of the University and those of the city of Lexington, the Trustees of Transylvania University have erected the Morrison College on their grounds, on the opposite side of said street from their other buildings, and have connected their grounds by closing said street, so far as it runs through them; that doubts are entertained whether the Trustees of the city had power to allow said street to be closed, without an act giving the consent of the Legislature to the agreement between the Trustees or agents of the University and those of the city of Lexington.

"*Be it therefore enacted by the General Assembly of the Commonwealth of Kentucky*, That the agreement made as aforesaid, shall be good and valid, and that so much of said street as leads through or divides the grounds of Transylvania University, shall hereafter cease to be a highway in the city of Lexington; and that the Trustees of Transylvania University shall, as to so much thereof,

have the same power, rights and privileges, as they have by law over the adjacent grounds belonging to the University."

Decree of Circuit Court.

Afterwards, at the instance of some of the citizens, the municipal council of the city of Lexington having determined to re-open so much of said street as had been thus closed, the Trustees of the University filed a bill in Chancery for enjoining them. But, on the final hearing, on bill and answer, the Circuit Judge dismissed the bill. And that decree is now sought to be reversed.

The University relies on the foregoing enactment, as an authoritative, unqualified, and perpetual obliteration, of so much of the street as had been closed. The city denies the power of the Legislature, to abolish any portion of the street, without the consent of the municipal authorities, or of the citizens immediately interested—insists that no such consent was ever given—and moreover, contends, that the enactment relied on, was intended and should be construed, as only ratifying the agreement, as made, for closing the street, subject to the reserved right to re-open it upon the stipulated contingency.

Every owner of ground on any street in a town or city, has an indisputable right to the common and unobstructed way of the contiguous highways, so far as it is necessary to afford him incidental easements, of which the Legislature cannot deprive him without consent, or just compensation in money.

Every owner of ground on any street in Lexington, has a right, as inviolable as it is indisputable, to the common and unobstructed use of the contiguous highway, so far as it may be necessary for affording him certain incidental easements and services, and a convenient outlet to other streets. And of this right, the Legislature cannot deprive him, without his consent, or a just compensation in money. The extent of this appurtenant right, depending on circumstances, may not, in a particular case, be easily definable with mathematical precision. As far as it exists, however, it partakes of the character of private property, and is therefore protected by the fundamental law, as property. But it cannot, as to each proprietor of ground, be coextensive with all the streets and alleys of the city. As a private right, it must, like that of vicinage, be limited by its own nature and end; that is, chiefly by the necessity of convenient access to, and outlet from the ground of each proprietor. Beyond some such general limit, as to each proprietor of ground in the city, the streets are altogether public highways, and subject, like

other public roads, to alteration and even occlusion, by the sovereign will, for the common weal. We could not admit that there is no power to change any portion of a street in any part of the city, without the consent of every proprietor of ground in the whole city, or without making compensation in money to every such proprietor.

As the College square is surrounded by open streets, and the University is the exclusive owner of all the ground on each side of the inclosed portion of Third street, there might be some difficulty in proving that the occlusion has affected any private right guarantied by our constitution. But however this might be, the effort has not been made in this case, and perhaps could not have been judicially made, as no proprietor is a party. And private rights being untouched, we have no doubt that the Legislature has power to regulate and alter all the public highways in the Commonwealth—in towns and cities, as well as in the country.

But, in our opinion, the only object of the Legislative act, relied on in this case by the University, was a conclusive ratification of the provisional agreement under which the street had been closed; and we are, consequently, of the opinion also, that this is the only constructive effect of that enactment. It is true that a part of the enacting clause declares that so much of the street as had been closed, should "cease to be a highway," and also, that the University might exercise the same dominion over it as over their adjacent grounds. Had nothing more been enacted or said, the only debatable question would have been one of power, not of intention or interpretation. But the context shows clearly, as we think, that those provisions, whose abstract import would be so comprehensive and indisputable, have a relative and qualified meaning.

The preamble, whose only purpose was to recite the object of the enactment, shows that the only object was to give legislative sanction to the agreement, in consequence of which the street had been closed. And the enactment itself declares that "*the agreement*, made as aforesaid, shall be good and valid." What agreement? The preamble responds—the agreement "giving consent"

that the street should "be closed"—and that is, of course, the agreement as made, the whole agreement, proviso and all. The residue of the enactment was superfluous. It only declares *the consequences of the legislative ratification of the agreement to close the street.* It should be understood, therefore, as meaning only that, as the whole agreement, as made, had been ratified, therefore the street should "cease to be a highway," *according to the stipulations of that agreement,* and that the University should exercise dominion over it *as long as, consistently with the recognized and sanctioned agreement, it should continue to be closed.*

The statute and contract construed by the Courts.

But even if the enacting clause could be so construed as to expunge or disregard the stipulation reserving the elective right to re-open the street—still we should not feel authorized to reverse the decree; for it is evident that if the Legislature intended that the street, as closed under the agreement, should absolutely and forever cease to be a highway, the whole agreement as made, was either not communicated by the University or understood by the members; and, on this general hypothesis, a Court of Equity should not assist the University in enforcing either a fraud on, or a mistake by, the Legislative department. The city denies that it was, in any way, privy to the enactment, or ever consented to surrender its reserved privilege. As then the city succeeded to all the rights of the former town and Trustees of Lexington, we are of the opinion that a Court of Equity should not enjoin it from its reserved right to open the said street whenever, according to the said agreement, the interest of the town, *in its opinion,* shall require the opening. No court should revise or control the exercise of the judgment and will thus reserved, as the very substratum of the consent to the provisional closing of the street. The Legislature alone can control it for the public good.

The decree of the Circuit Court, dismissing the bill, is therefore affirmed.

*Hickey* for plaintiff: *Robinson & Johnson* for defendant.