## DeRossette v. Jefferson County et al.

June 20, 1941.

408

Carroll, McElwain & Ballantine and L. D. Deters for appellant.

Lawrence S. Grauman, Robert L. Sloss, Trabue, Doolan, Helm & Stites, Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant in suit made appellees, Jefferson County, State Highway Department, its Commissioner, and the C. St. L. & N. O. Rwy. Co. defendants. Appeal is from judgment sustaining general demurrers of all defendants, and dismissing petition upon declination to plead further.

Appellant owned a tract of land near Louisville, on Highway No. 31 W, an old and heavily traveled highway, running southwardly from the city. Near St. Helens it intersected the railroad tracks at grade. The tract abutted the west side of the road for a distance of 536 feet, and was triangular in form, the vertex being at the crossing. As shown by map exhibited, there is a frame building on the wide end of the tract and near the crossing a shed and small building.

Appellant charged that in 1937 the defendants, acting under lawful powers, eliminated the grade crossing by building an underpass. Plans and specifications for the underpass, and relocation of the highway were prepared, approved by and agreed to by all defendants, and contract for constructing the underpass was entered into between the railway company and the department. Thereupon it became necessary, as provided by law, for the county to procure rights of way for the relocation of the highway. These were procured by agreement. There was no agreement or court proceeding as to appellant's tract, since no part of it was necessary to accommodate the proposed changes.

No change was made in the grade of the old road at the crossing with the new right of way; as a consequence the northern embankment of the underpass created the drop of 30 feet in the old road. Prior to the change, persons moving southwardly crossed the railroad tracks at grade; since the change traffic cannot move southwardly over the old location, because of the embankment.

Appellant claims that the change had the effect of closing and obstructing the old road at the southwest corner of his property, interfering with traffic moving south. That having been formerly situated on a much traveled highway, and his land suitable for business and light industrial purposes, and having a number of tenants who conducted profitable businesses (the character not shown), by the "construction of the underpass and obstruction of the old road, traffic has been diverted to the new highway, and he had lost his tenants," thus depreciating the value of his property.

The new road left the old road at a point nearly opposite the northeast line of the tract, and turned eastwardly into and along Manslick road, thence southwardly for 250 feet to a point where the Manslick road and the new road intersected Berry Boulevard. From that point the new road runs still southwardly for a distance of about 500 feet until it reached the underpass. Appellant contends that due to actions of defendants, his property has been injured and destroyed, without making compensation, measuring his damage at the difference between the market value before and after the relocation.

Appellant stands on the proposition that the closing of a public highway, abutting the property of an owner, is the taking of property within contemplation and meaning of Sections 13 and 242 of our Constitution, hence, under the facts stated, one or the other, or all the defendants should respond in damages. The statement, when applied to cases where certain facts exist, as a general proposition is true, as evidenced by many of our decisions dealing with the subject.

But, there are limitations as to what constitutes a taking or applying to public use (Constitution, Section 13) or taking, injuring or destroying private property, in applying it to public use (Constitution, Section 242). Expressions of the broad application, which we conceive to be contended for here, have crept in to some of our opinions, wherein there existed a genuine legal or constitutional ground for application of the principle that no person's property may be taken, injured or damaged without making just compensation, though generally relating to measure of values.

Analysis of the skillfully prepared petition shows

no actual taking of any portion of appellant's property. Neither was there physical injury or damage to the property or any part thereof. There is no charge of depreciation in value because of deprivation of reasonably convenient ingress or egress. The petition and map manifest that there may be a slight inconvenience to appellant and tenants in journeying southwardly.

That one claiming damages for obstruction of ingress or egress by construction or alteration of a highway may recover, is beyond argument, provided the obstruction be such as will interfere with reasonable access to his property or the highway, and that a property owner who is specially affected by reason thereof may maintain an action independently of remedy on behalf of the public at large for damages resulting therefrom, is well settled, Illinois Cent. R. Co. v. Ward, 237 Ky. 478, 35 S. W. (2d) 863, but this court has the final say as to whether or not an obstruction is such as to prevent reasonable access. Louisville & N. R. Co. v. Johnson, 233 Ky. 628, 26 S. W. (2d) 535; Bondurant v. Paducah & I. Rwy. Co., 186 Ky. 794, 218 S. W. 257.

We need not discuss that phase of the law, since appellant has pitched his cause on the ground that by the relocation of the new highway, "traffic has been diverted to the Seventh Street road as newly located," and on this ground relies upon Illinois Cent. R. Co. v. Ward, supra; Cranley v. Boyd County, 266 Ky. 569, 99 S. W. (2d) 737, and Henderson v. City of Lexington, 132 Ky. 390, 111 S. W. 318, 22 L. R. A., N. S., 20. A casual reading of those cases might lead to the conclusion that they, in part, uphold appellant's cause. Unless differentiated they would have influence.

In the first case we reversed because the court erroneously sustained demurrer. It was shown that defendants had wrongfully and permanently obstructed a portion of a roadway that provided access to and from plaintiff's land, thereby destroying all means of ingress and egress to and from the property, compelling owners "to travel   *   *   *   in the opposite direction   *   *   * whenever it was necessary to travel to the west, north, and south of their residence located on the farm," [237 Ky. 478, 35 S. W. (2d) 864] a typical case of an unreasonable obstruction.

One element justifying reversal was the fact that

the county road, because of procedural irregularity, had been illegally closed. In that case we unqualifiedly followed the rule above stated, and went to some length in distinguishing, on technical grounds, Bradbury v. Walton, 94 Ky. 163, 167, 21 S. W. 869; Chenault v. Collins, 155 Ky. 312, 159 S. W. 834, and Beatty v. Louisville & N. R. Co., 176 Ky. 100, 195 S. W. 487, in which this court had theretofore said that abutting property owners in no event have property right in the continued maintenance of a public road, and in the Ward case suggested that what the writers of these opinions had said in this respect "were made arguendo and decided nothing respecting the obstruction of highways." However, as we construe it as distinguishing the instant case, the writer said:

"The cases here presented were predicated upon a wrongful obstruction of the public road, and did not proceed upon the theory that a road had been closed or changed by a proper proceeding for that purpose."

In this case it was asserted that every movement made by defendants was in accord with the law. It may be noted that this court in the Beatty v. Louisville & N. R. Co. case, supra [176 Ky. 100, 195 S. W. 491], cited the Chenault and Bradbury cases, supra, and in addition Cole & O'Harra v. Shannon, 1 J. J. Marsh. 218; Lexington & O. R. Co. v. Applegate, 8 Dana 289, 33 Am. Dec. 497, in supporting the principle that:

"* * * a private citizen has no vested right in the permanent continuance of a public highway for a discontinuation of which he might maintain an action either for damages or to enforce a perpetual maintenance of the highway."

A reading of Cranley v. Boyd County, supra, at first blush appears to lend force to appellant's contention, as would the case upon which it was founded, Henderson v. City of Lexington, supra. However, we have examined the transcript in the Cranley case, and find that the petition charged unreasonable obstruction; interference with egress and ingress, not to or from the main highway which had been relocated, but to that portion of the old highway which led to a plant where numerous persons were employed. It is demonstrated, not that the old highway north of the railroad track was aban-

doned, but that in the ex parte proceeding the county engineer, under court orders, closed the crossing by building effective barriers on each side of the railroad track, one on the south, within two or three feet of Mrs. Cranley's property line. She relied upon several grounds for recovery: Unreasonable interference with access to and from the old road; the diversion of traffic to the new road, and procedural irregularity in closing the Westwood road. The court of first instance apparently sustained demurrer on grounds (a) that the damages suffered by appellant by closing of the road was general; (b) there was no actual taking of her property, or interference with her ingress or egress. In our conclusion we said, in differentiating cited cases [266 Ky. 569, 99 S. W. (2d) 741]:

> "But this suit is not for any injury to the property arising from the construction or the manner of construction of the new highway. Its existence undoubtedly caused the closing of the grade crossing. But it must be regarded only as incidental to the abandonment of that part of the old road which resulted in injury to plaintiff's property. The proximate cause of the damage was the closing of the old road, and not the construction of the new."

It is manifest that the element of damage there chiefly considered was the building of the barriers across the road leading into the highway, thus unreasonably interfering with ingress and egress. After holding that the owner had suffered damages compensable under the constitutional provisions, supra, we said that the general weight of authority in requiring compensation to an owner of property for damages incurred, such must be the direct and immediate consequence of the act complained of, and that "recovery cannot be had for remote or contingent injury. Nor will compensation be required where a change in a road results merely in personal inconvenience or injury, such as to trade or business, by diverting traffic, or compels a more circuitous route of access."

If this case presented same or similar facts in the Cranley or Henderson cases, it might be held that the diversion of traffic could be considered as evidence in fixing depreciation of value. Our conclusion in this respect and as indicating that what the court had in mind,

actual compensable damage, for illegally closing a road, or unreasonable obstruction of access, is shown by the following:

> "It is to be recognized * * * that the damages to be allowed are not in consequence of the diversion of traffic merely—it is the dimunition in market value through the taking of an easement in an adjacent road. The diversion is an incidence or consequence of that taking. It is a matter of evidence to be considered."

We said in the Cranley case, "this case is ruled by Henderson v. City of Lexington," supra, and there is no discordance. As will be observed from the writer's clear and full statement of the facts, and as shown by the diagram in the opinion, Henderson owned a valuable lot abutting on Ayers alley, between Main and High Streets. Water Street intersected the alley between Main and High, and was occupied by several railroad tracks, making the crossing exceptionally dangerous. The city in conjunction with the company, to relieve the situation, provided for the erection of a viaduct from Main to High over Water Street. As a part of the plan, by orders of the city, Ayers alley was closed by the erection of two walls on each side of Water Street, one of which was near the corner of Henderson's property, thus as the court found, unreasonably obstructed Henderson's use of the long established city alley.

The Henderson case is a treatise on the rights of the public in and to an established city street or alley, and the rights of abutting owners, as distinguished from the rights of the public at large. Numerous questions were raised and thoroughly discussed, but it would serve no useful purpose to reiterate. As to Henderson's right to damages, because his convenient ingress and egress and use of the alley had been destroyed, there was left no doubt. In reference to that question, the court based its conclusion somewhat on the old case of Transylvania University v. City of Lexington, 3 B. Mon. 25, 42 Ky. 25, 38 Am. Dec. 173, which laid down this rule:

> "Every owner of ground on any street in Lexington, has a right, as inviolable as it is indisputable, to the common and unobstructed use of the contiguous highway, so far as it may be necessary for affording him certain incidental easements and serv-

ices, and a convenient outlet to other streets. * * * As a private right, it must, like that of vicinage, be limited by its own nature and end; that is, chiefly by the necessity of convenient access to, and outlet from the ground of each proprietor. Beyond some such general limit, as to each proprietor of ground in the city, the streets are altogether public highways, and subject, like other public roads, to alteration and even occlusion, by the sovereign will, for the common weal.''

In this case it was sought to reopen a street across a part of Transylvania grounds, which had theretofore been closed by agreement. We find no quarrel with the principles announced and later adopted in the Henderson case. In commenting on the instruction fixing the measure of damages, which we need not repeat, this court found it to have been more favorable to Henderson under the facts, and remarked [132 Ky. 390, 111 S. W. 325, 22 L. R. A., N. S., 20]:

''The measure of damage to which the property holder is entitled in cases of this character does not include loss occasioned by injury to his business. He is only entitled to compensation for loss sustained to his property, and this loss is the difference in the market value of the property. Any other criterion * * * would enter the field of speculation, and make the loss incapable of reasonable adjustment. * * * the owner may have established a business in a particular place or building that was more valuable to him than it would be to any one else * * *. But these evidences * * * of value * * * affect the individual more than they do the property.''

We do not mean to hold that if plaintiff should manifest that his property, by the erection of the underpass, or the slight change in relocation, or both, he has been denied access to and outlet from his property, he would not have, if properly presented, actionable cause. But the pleading before us, with the engineer's map, made part of it, presents no such case. It is no doubt true that the erection of the underpass had the effect of ''permanently closing or obstructing the old Seventh Street road at the southwest end of plaintiff's property,'' thus ''making the old highway impassible to

through traffic." This presents a complaint common to the general public. It is no doubt true that plaintiff's property "was adaptable and suitable for business purposes," and that "he had a number of tenants on said property, each of whom conducted a profitable business thereon." And that since the construction of the underpass and the closing of the old road, "all of said traffic has been diverted to the road as newly located." From this pleading we gather, as we must, that plaintiff's tenants moved because the through traffic was diverted to the new road, and that traffic was diverted because of the cul de sac at the old point of crossing.

Giving the pleading a more liberal construction than the rules with regard to pleadings justify, we fail to find stated a cause of action against all or any one of the defendants, a conclusion fortified by weight of authority.

One of the latest, and perhaps a leading case on the subject, is Nelson v. State Highway Board, 110 Vt. 44, 1 A. (2d) 689, 691, 118 A. L. R. 921, which we think is conclusive and, as indicated therein, reflects the weight of authority. The Nelsons were owners of land on the westerly side of the Connecticut River. U. S. Route No. 5 followed the course of the river past the buildings on Nelson's tract. The state authorities relocated the highway so that it ran 1600 feet back of Nelson's property, leaving the old road so that at points it joined up with the new highway. Nelson claimed, and was allowed, for five items of damage; land taken, fencing and gates, relaying drainage pipes, and inconvenience in the division of his land into two parcels. The appellate court sustained the finding of the lower court in all respects, except as to a claim for $4,500 for "consequential damage due to the use of [the] land in question as a new route for the main stream of public travel, 1,600 feet in the rear of [appellant's] buildings instead of directly in front of them as at present." In the disallowance of this claim the court wrote:

"In diverting traffic from in front of the Nelsons' buildings to the new route there is no invasion of their rights nor is there any legal injury to the land remaining. Access to their buildings remains unchanged. The buildings and lands about them will remain exactly as before establishment of the new route except that travel past the buildings will doubtless be diminished. But the State owes no

416

duty to the Nelsons in regard to sending public travel past their door. Our trunk line highways are built and maintained to meet public necessity and convenience in travel and not for the enhancement of property of occasional land owners along the route. Benefits which come and go with changing current of public travel are not matters in which any individual has any vested right against the judgment of those public officials whose duty it is to build and maintain these highways. The Nelsons are not entitled to receive any compensation for diversion of traffic as allowed in the last item set forth in the elements of damages. This appears to be in line with the holdings of other courts in every instance where this question has been considered under constitutional and statutory provisions similar to ours."

The court following the above, cited some fifteen or sixteen cases upholding the applied principle, and it is on the principle enunciated in some of these cases we reach the conclusion that the court of first instance correctly sustained general demurrers.

Judgment affirmed.

Whole Court sitting.