COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Edward J. CARLISLE et al., Appellees.

Court of Appeals of Kentucky.

Dec. 14, 1962.

John B. Breckinridge, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., Leslie Aberson, Dept. of Highways, Frankfort, Frank D. Berry, Madisonville, for appellant.

Neville Moore, Moore & Morrow, Madisonville, for appellees.

CULLEN, Commissioner.

The Commonwealth of Kentucky, Department of Highways, appeals from a judgment in a highway condemnation suit awarding Edward Carlisle and wife $16,000 damages in accordance with a jury verdict fixing $13,400 as direct damages for the taking of a portion of a tract of land and $2,560 as resulting damages to the remainder of the tract. The Commonwealth maintains that the verdict was not sustained by sufficient evidence and is excessive.

The Carlisle tract is a vacant lot located on the east side of U.S. Highway 41, a north-and-south highway Before the condemnation the tract had a 300-foot straight frontage along the highway, and extended back a depth of 683 feet. It contained 3.87 acres.

The Department of Highways acquired rights of way across land directly to the north of the Carlisle tract for the purpose of constructing a new east-west highway intersecting U.S. 41. In order to construct a deceleration lane and a turning

lane for traffic coming from the south on U. S. 41 and desiring to turn east onto the new intersecting highway the department brought the instant action to condemn an irregular-shaped parcel on the northwest corner of the Carlisle tract. This parcel consists of about one-third of an acre. Beginning at the northwest corner its boundary runs 192 feet south with the west line of the Carlisle tract, then east 50 feet, then north 100 feet, then northeastwardly 127 feet to a point on the north line of the Carlisle tract which is 165 feet east of the northwest corner, thence with the north line to the beginning point.

In its petition for condemnation the Department of Highways stated that it sought to condemn the parcel above described "and that the defendants shall have no right to ingress or egress to or from their remaining property to or from the proposed highway." But neither the judgment in the county court nor the judgment in the circuit court purported to condemn any access rights. However, all of the witnesses based their estimates of damage on the assumption that the only highway access the landowners would have after the condemnation would be a 16-foot entranceway to U.S. 41 near the south line of the lot.

Since the Department of Highways undertook to condemn access rights rather than depend upon such authority as it might have had under the police power to limit access, and since the case was tried on the theory that access rights were being condemned, we think the case must be decided on the basis that the access rights were in fact condemned. But the troublesome question is: What were the rights of access that were condemned? See Cromwell, Loss of Access to Highways, 48 Virginia Law Review, No. 3, p. 538.

The case seems to have been tried on the assumption that the landowners had unqualified rights of access to U.S. 41 along the entire frontage of their lot. We cannot say that the damages awarded were excessive or were not sustained by suf-

ficient evidence if such were their rights of access. And although in our opinion there was a misconception of the nature and extent of the actual rights of access we feel compelled to affirm the judgment because of the way the Department of Highways elected to present and try the case. However, we shall avail ourselves of the opportunity to express our views as to the proper rules governing access rights.

■■ At the outset we think it is necessary to point out that the benefit an abutting landowner may derive from the location of a highway and the direction of the traffic courses thereon is not a matter of right and it does not come within the category of access rights. The landowner has no right against relocation or change in the traffic courses of the highway. DeRossette v. Jefferson County, 288 Ky. 407, 156 S.W. 2d 165; 5 Nichols, Eminent Domain, sec. 16.101(5). He has no right against the placing of a turning or deceleration lane between his property and the main highway. He has no right against the placing of traffic dividers between the lanes of the highway that will impede his access to the far lane. State v. Peterson, 134 Mont. 52, 328 P.2d 617.

■ It appears that a substantial amount of the damage to the Carlisle lot in the instant case will result from the construction of the deceleration and turning lane between the lot and U.S. 41, and the placing of traffic dividers between the north and south lanes of that highway. This is damage for which the landowners were not properly entitled to be paid, because it did not involve a taking of any *rights* they had. However, several witnesses were permitted, without objection, to include the above factors as elements of damage in their evaluations. No objections having been voiced by the Department of Highways nor any suggestion made to the trial court that these were not proper elements of damage, the department is in no position to claim error in this regard.

■■ Coming now to the matter of true access rights, it is our opinion that the only access right the landowner has is a right of *reasonable access to the highway system.* Department of Highways v. Jackson, Ky., 302 S.W.2d 373. Access is subject to control under the *police power,* so the test of reasonableness involves measuring the benefit to the owner against the hazard and danger to the traveling public. Bowling v. City of Somerset, Ky., 333 S.W.2d 769.

■ Where the state undertakes to limit access under the *police power* it seems to us that the measuring of benefits against hazards must be done on the basis of *present use* of the property rather than prospective future use. If the owner devotes his property to a use which requires substantial access before the highway conditions become so hazardous as to create a need for limiting the access, the owner's rights weigh heavy in the measuring balance. But if the highway becomes hazardous at a time when the land is unoccupied, the owner's right to develop the land for a use requiring substantial access must yield. This is comparable to the rule in zoning cases, where if the owner is devoting his property to a commercial use before the district is zoned residential he is entitled to continue it, but if the zoning is done first he cannot realize on the formerly existing potential commercial value of his property.

In the final analysis the question is one of public policy. The welfare of the public requires highways reasonably safe from access hazards. On the other hand the abutting owner is entitled to reasonably unlimited enjoyment of the full potential of his property. ..n important consideration, we think, is that where the owner desires to use his property for *commercial* purposes it is the existence of the highway that gives the property its commercial value. In our opinion an abutting owner who has not yet devoted his property to a commercial use, but who claims a commercial value by reason of the highway, must yield to the public interest if the highway form or use in the meantime becomes such as to require limitation of access in the interest of public safety.

■ Applying the foregoing principles to the instant case, it would appear that had the Department of Highways not elected to condemn the access rights the landowners would have had no claim for depreciation in value from loss of access, because their access rights would not have been affected. And if the department later undertook by administrative order to bar access to the deceleration lane and to U. S. 41 at the point where the deceleration lane began, and the Carlisle lot at that time continued to be vacant, the order would stand good chance of being upheld under the police power. In such a situation the potential value of the lot for commercial use would not enter into consideration.

The fact is, however, that here the Department of Highways elected to condemn the access rights. We conceive that it would be practically impossible, procedurally, in a condemnation case, to attempt to value an access right in relation to the extent it possibly could be restricted under the police power, if exercised. So even though the owner's access right is not an unqualified right of full access along his entire frontage, nevertheless where the right is sought to be *condemned* (and has not previously been limited by an order under the police power) there is no way to value it on any basis other than that it is an unqualified right. So there is no escape in the instant case from the result which pays the landowner for rights that he did not fully have.

It is true that prior to the condemnation in the instant case there was in force an order of the Department of Highways requiring a permit for construction of an entranceway to any main highway, but this appears simply to have been for the purpose of controlling the manner of *construction* of entranceways and not to limit access.

. Since the case was pleaded and tried on the theory that access rights were being condemned, the judgment should be modified to recite specifically that all access rights are condemned except for the designated 16-foot accessway.

The judgment is affirmed with directions that it be modified as above prescribed.