**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**Andrew YORK et al., Appellees.**

Court of Appeals of Kentucky.

May 7, 1965.

Robert Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Phillip K. Wicker, Dept. of Highways, Somerset, for appellant.

C. Homer Neikirk, Somerset, for appellees.

WILLIAMS, Judge.

This highway condemnation proceeding originated in Pulaski County and involves the reconstruction and relocation of a portion of US 27. The judgment in the county court awarding $9,000 compensation for the .83 acre taken was appealed to the Pulaski Circuit Court. A jury in that court awarded a verdict of $20,000. From a judgment taken upon that verdict this appeal is brought.

Prior to this condemnation proceeding the appellees owned a 4-acre tract located on US 27 south of Somerset and in the general vicinity of Cumberland Lake. In 1950, a motel, containing eight units and an office, was constructed on this property. Two gravel entrances from the highway met in front of the motel building, providing a semicircular drive.

The land acquired by the Commonwealth was a strip 110 feet wide and 314 feet long, located behind the motel. The lateral lines and lateral field of a septic tank which serv-ed the motel were installed in the area taken by the Commonwealth and, as a consequence, were destroyed. The motel building now rests on a tract of 1.48 acres between the new road and the old road which, incidentally, has been kept open for public use and is maintained by the highway department. On the opposite side of the new road the appellees still have 1.69 acres. Access to both tracts from the new road is available.

At the trial the witnesses for the Commonwealth testified the difference between the before and after value was from $5,300 to $5,790. The witnesses for the landowners testified the difference between the before and after value was from $24,000 to $35,-000. The Commonwealth insists that the before value of at least two of the landowners' principal witnesses was improperly founded and the testimony thereon should have been stricken.

The landowners' first witness, Ambrose Dudley, qualified as an expert and testified that the value of the property before the taking was $48,000. One factor which he used to determine that figure was income which has been declared to be improper, especially where the income is derived mainly from the skill of the operator rather than from the productivity of the property. See Commonwealth, Department of Highways v. Smith, Ky., 358 S.W.2d 487 (1962); Commonwealth, Department of Highways v. Fister, Ky., 373 S.W.2d 720 (1963). The Court admonished the jury not to consider the income factor but refused to strike Mr. Dudley's testimony.

 Had the income factor been the only method used by the witness to determine the before value, his testimony should have been stricken. Mr. Dudley not only qualified as an expert witness, but he testified that he used comparable sales as another factor by which he determined the before value. Thus the witness did not determine his estimates solely on an erroneous factor but used competent ones as well. In West Kentucky Coal Co. v. Commonwealth, Ky.,

368 S.W.2d 738 (1963), we stated that a witness' estimate based solely or primarily on an improper factor is invalid and subject to a motion to strike. But, where other factors which are proper are employed, that rule does not necessarily follow.

■ Another witness for the landowners, Rue Wesley, revealed on cross-examination that he arrived at the before value by breaking down the component parts of the property. In other words, he put a value on the motel building, the land, the fence, the well, the electric sign, the landscaping, the septic system, and the driveway. That this was an improper method is clearly pointed out in Commonwealth, Dept. of Highways v. Stamper, Ky., 345 S.W.2d 640 (1961). But Mr. Wesley also relied on other factors to determine his before value estimate. That portion of his evidence which was based on proper factors was competent and was properly permitted to stand.

Mr. Wesley did get into an untenable position when he was unable to satisfactorily explain how he arrived at his after value estimate, but the jury was well aware of that shortcoming and certainly in position to give it due consideration.

■ On the whole, we are not convinced that the before value estimates of any of the witnesses were subject to strike. The after value evidence of Mr. Wesley was so thoroughly impeached by the Commonwealth that it would have availed it naught had such evidence been stricken.

■ The case must be reversed, however, because the verdict is not sufficiently supported by evidence of probative value. This comes above because of a situation which prevails only in condemnation proceedings. Regardless of how lucrative an individual's business is, if it depends upon the flow of traffic by his property, he is entitled to no recovery for loss of business or value of his property when that traffic is diverted along another route. DeRossette v. Jefferson County, 288 Ky., 407, 156 S.W.2d 165

(1941); Commonwealth, Department of Highways v. Slusher, Ky., 371 S.W.2d 851 (1963). It is understandably difficult for appraisers and landowners to ignore that factor when determining the amount of compensation to which a landowner is entitled when a portion of his property is taken.

■ In this case a major factor in the determination of estimates of the after value by each of the landowners' witnesses was the belief that the septic system was destroyed and the property could no longer be operated as a motel. But qualified proof was presented by the Commonwealth that sewerage facilities could be installed on the property remaining for a cost of not more than $4,700. For that amount then the motel could have been operated as it had been previously, except the rear of the motel would have fronted the relocated highway. The business of the motel possibly would be reduced because the traffic was diverted from the front to the rear of the motel, but, as heretofore stated, that is not a compensable item. Since the sewerage facility could have been rebuilt for $4,700, no greater amount could be attributed to diminution of value of the property because of destruction of the septic laterals. It follows there was no competent evidence to support the $20,000 verdict of the jury.

■ The Commonwealth asked for an instruction on diversion of traffic as an element of value. There was no evidence by any witness concerning that factor, but, unfortunately, the trial judge sent the jury to view the premises with the following admonition:

> "Now Ladies and Gentlemen, I am going to let you go down and view the scene—now you can see it down there yourselves. You will implement what you see with the evidence, you are the sole judge of it, whatever you see down there, implemented with the other evidence is evidence, and can guide you at arriving at a verdict * * *"

The jury was advised that what they saw was evidence equally as competent as what they had heard from the witnesses. So being, an instruction on diversion of traffic should have been given because it was obvious upon inspection that traffic had been diverted from the front to the rear of the motel.

An instruction requiring the landowner to use ordinary care to remedy or repair the sewerage system, although improper, was more favorable to the Commonwealth than to the landowner.

■ On a new trial the jury should be instructed to find the fair market value immediately before the taking, the fair market value after the taking, and the difference between the two. Commonwealth, Department of Highways v. Priest, Ky., 387 S.W.2d 302 (1965).

The judgment is reversed for a new trial.

MOREMEN, C. J., and MILLIKEN, J., dissenting.

MOREMEN, Chief Justice, with whom MILLIKEN, Judge, joins (dissenting).

The authority of the Highway Department to condemn property is found in KRS 177.081 and subsequent sections. A portion of KRS 177.087 reads: "All questions of fact pertaining to the amount of compensation to the owner or owners shall be determined by a jury, which jury, on the application of either party, shall be sent by the court, in the charge of the sheriff, to view the land and material." Most condemnation statutes contain such a provision.

Section 242 of the Constitution of Kentucky, which deals with the subject of the taking of private property for public use, provides in part, "the amount of such damages shall, in all cases, be determined by a jury, according to the course of the common law." We have interpreted that section to mean that a jury must reach a unanimous verdict to have any effect, while in other cases, nine jurors may reach a proper verdict. Only in criminal cases and in condemnation cases are unanimous verdicts required. Evidently in our development of law these two important subjects have been considered to be peculiarly within the province of a jury. Primarily the exercise of the right of eminent domain is by or through the sovereignty of government in this country, so reliance has been had upon a jury to resist any misuse of that power. Other administrators of the law have been relegated to a secondary position.

The majority opinion implies a viewing of the premises by the jury serves an empty purpose, that they should be permitted to see only that which is explained by evidence given in court. In addition it seems to place a duty upon the trial court to warn them against the use of any facts which they actually observed at the scene. We believe that the jury is sent to the premises to obtain information that has not been described in the evidence—that this is not a sight-seeing interlude where each juror must wear the restricting blinders of evidentiary legal rules.

It is suggested that the charge given by the trial court quoted in the opinion was substantially correct. He should not be charged with the unusual and perhaps impossible task of giving an instruction to negate any condition which under our rules has been held to be an improper factor in determining just compensation.

If it is true that a jury may look but cannot see, then we are forced to the recollection of the old quatrain which went something like this: "Mother, may I go out to swim? Yes, my darling daughter, hang your clothes on a hickory limb, but don't go near the water."

We therefore respectfully dissent.