RENDERED: DECEMBER 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1025-MR

GARY A. ATKINS                                                          APPELLANT

v.
## APPEAL FROM ELLIOTT CIRCUIT COURT
## HONORABLE REBECCA K. PHILLIPS, JUDGE
## ACTION NO. 16-CI-00012

THE KENTUCKY
TRANSPORTATION CABINET                                                  APPELLEE

## OPINION
## AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND K. THOMPSON,
JUDGES.

THOMPSON, K., JUDGE: Gary A. Atkins appeals from the orders of the Elliott

Circuit Court which: (1) granted the motion for summary judgment brought by the

Kentucky Transportation Cabinet (the Transportation Cabinet) on Atkins's inverse

condemnation claim regarding the placement by the Cabinet of a large earth

embankment that partially blocked Atkins's used car dealership from being viewed

from a highway; and (2) denied Atkins's motion for injunctive relief seeking to be

allowed to remove this embankment. We affirm as Atkins had no right to continued visibility from the highway and any resulting business loss he may have suffered is not compensable.

Atkins's used car dealership, Gary's Auto Sales, is located off Kentucky Route 7 (KY 7), a state highway that runs through the City of Sandy Hook. Prior to 2011, Gary's Auto Sales enjoyed prominent visibility while traffic was traveling in both directions on KY 7.

In 2011, in the process of altering and redesigning KY 7, the Transportation Cabinet left a long and tall embankment along the public right of way directly across from Gary's Auto Sales which effectively blocked the public's view of the business except on the southern approach. Gary's Auto Sales and its electronic sign is not visible when traffic is directly across from it on KY 7.

From 2011 to 2015, according to Atkins's affidavit, he negotiated with the Transportation Cabinet regarding obtaining permission for him to remove the embankment. In 2015, Atkins bought a portion of the property on which the embankment was located for $3,800.

In 2016, Atkins filed a complaint against the Transportation Cabinet, arguing that by failing to allow him to remove the embankment, the Transportation Cabinet "caused a diminution of the value of his property, which constitutes an

inverse condemnation of his commercial property by arbitrarily and wrongfully refusing to allow him to remove or remodel the embankment in question."

The Transportation Cabinet answered and then filed a motion for summary judgment, arguing that Kentucky does not recognize a condemnation claim based on business losses or the loss of highway visibility for a business.

On April 16, 2019, the circuit court granted the Cabinet's motion for summary judgment, determining there was no taking entitling Atkins to damages. The circuit court explained that the visual obstruction caused by the embankment was not a proper factor to consider for compensation, any decrease in Atkins's property or loss of business due to diminished visibility did not constitute a taking, and any expenditures made in efforts to stop or mitigate lost profits were not compensable. The circuit court emphasized there had been no interference with ingress and egress from the property. It declined to resolve whether Atkins was entitled to injunctive or equitable relief as to the removal of the embankment, as the parties had not briefed that issue.

On August 19, 2019, Atkins filed a motion for a preliminary injunction to resolve the issue of "whether or not the Plaintiff can flatten an embankment that the Defendant caused to be placed in front of his car dealership business . . . so that the traveling public could see the vehicles he has for sale at his car dealership[.]" In conjunction with his affidavit, Atkins presented three pictures

depicting: (1) Gary's Auto Sales and its electronic sign, (2) the front side of the embankment which separates Gary's Auto Sales from KY 7 and has a Sandy Hook marker; and (3) the back side of the embankment. Later, Atkins presented a picture showing how the beginning of the embankment blocked most of the front of Gary's Auto Sales and its electronic sign on the approach.

In response, the Transportation Cabinet disputed that Atkins had any right to an injunction given the circuit court's prior ruling. The Transportation Cabinet relied on the affidavit of its engineer Darrin Eldridge, who worked on the KY 7 improvement project, as to why the removal of the embankment would be harmful.[1]

On August 16, 2021, the circuit court denied Atkins's motion for injunctive relief and granted summary judgment in favor of the Transportation

---

[1] Eldridge indicated the removal of the embankment:

> [W]ould be detrimental to the aesthetics of the area because . . . it would entail the removal of the landscaping and sign [installed by the City of Sandy Hook pursuant to an encroachment permit,] . . . would require [temporary] traffic stoppages on KY Highway 7 and is thus detrimental to the driving public[,] . . . could result in potential damage to the existing Highway 7 roadway from heavy equipment and trucks and/or require blasting[,] . . . [poses] potential issues with adequate drainage in the area[,] . . . [and] would confer no benefit whatsoever to the Kentucky Transportation Cabinet.

Eldridge also noted that Atkins had never applied for a permit to remove or alter the embankment.

-4-

Cabinet. In doing so, the circuit court made findings of fact based on the undisputed evidence and concluded an injunction was inappropriate because there was no substantial possibility that Atkins would prevail since his claimed injury had already been ruled to be not compensable under a claim for inverse condemnation. The circuit court explained that its equitable powers could not be used to circumvent the standards needed for a preliminary injunction, only Atkins would stand to benefit from the removal of the embankment with the public and others being thereby harmed, and Section 14 of the Kentucky Constitution was inapplicable as Atkins had access to the courts to argue he had suffered a taking but was unhappy with the resolution of that issue.

Pursuant to the Kentucky Rules of Civil Procedure (CR) 56.03, summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App. 1996). Summary judgment "should only be used 'to terminate litigation when, as a matter of law, it appears that it would be

impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.'" *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (quoting *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985)).

The key to resolving this appeal is the legal determination as to what if any right Atkins had in Gary's Auto Sales remaining visible from KY 7. The short answer is that he had no such right. Accordingly, there was no taking and, therefore, he is not entitled to any compensation or any type of injunction allowing him to eliminate the embankment regardless of his willingness to bear the cost of remediation.

"Inverse condemnation is the term applied to a suit against a government to recover the fair market value of property which has in effect been taken and appropriated by the activities of the government when no eminent domain proceedings are used." *Commonwealth, Uninsured Employers' Fund v. Cnty. of Hardin Planning & Development Comm'n*, 390 S.W.3d 840, 846 (Ky.App. 2012). "Under Kentucky law, before a plaintiff can make a claim of inverse condemnation, there must be an actual taking." *Spanish Cove Sanitation, Inc. v. Louisville-Jefferson Cnty. Metropolitan Sewer Dist.*, 72 S.W.3d 918, 921 (Ky. 2002). "Thus, actions for inverse condemnation . . . are directed at recovering from the government the fair market value of property which has been

appropriated." *August Properties, LLC v. Transportation Cabinet*, 627 S.W.3d 443, 446 (Ky.App. 2021).

"The 'reverse condemnation' principle rests on the premise of the taking, destroying or injuring of property by the sovereign without any color of right or title so to do." *Commonwealth, Dep't of Highways v. Davidson*, 383 S.W.2d 346, 348 (Ky. 1964). However, if the Commonwealth does what it has the right to do pursuant to right of way deeds, there can be no taking. *Id.*

Atkins claims his property right to have his business visible from KY 7 has been taken, with the loss of visibility to the traveling public generally damaging his profits and rendering his expensive electronic sign ineffective. He argued during oral argument that "you can't sell cars you can't see."

In examining Atkins's claim, it is helpful to review the general right that property owners do have. Property owners cannot be deprived of all access to the public road system. *Bailey v. Preserve Rural Roads of Madison Cnty., Inc.*, 394 S.W.3d 350, 361 (Ky. 2011). However, as explained in *City of Louisville v. Louisville Scrap Material Company, Inc.*, 932 S.W.2d 352, 357 (Ky. 1996) (citation omitted), they do not have a right to continued access to a particular road:

> The abutting owner has a right in a highway or publicly owned street to the degree that it is a reasonable right of access, but this right is limited to the type of access the appropriate governmental entity chooses to provide in the reasonable administration of its highway or street system and not a particular kind of street. The principle is that

> the rights of the abutting property owners are subservient to the rights of the public in the full enjoyment of public ways.

Therefore, "limitation of access, so long as reasonable access to the highway system remains, is not a taking by eminent domain, but is accomplished under the police power, and is not compensable." *Commonwealth, Dep't of Highways v. Denny*, 385 S.W.2d 776, 777 (Ky. 1964). Accordingly, "the benefit an abutting owner may derive from the location of a highway and the direction of traffic thereon is not a matter of right; neither does such benefit come within the category of access rights." *Id.* at 778.

There is a long line of cases in Kentucky that make it evident that roads can be moved and altered in such a way that a business no longer fronts or has direct access to a major road, and this is not a taking. *Commonwealth Transp. Cabinet, Dep't of Highways v. Comer*, 824 S.W.2d 881 (Ky.App. 1991); *Flynn v. Commonwealth, Dep't of Highways*, 428 S.W.2d 24 (Ky. 1968); *DeRossette v. Jefferson Cnty.*, 288 Ky. 407, 156 S.W.2d 165 (1941). If the road can be moved, without this constituting a taking, the alteration of a road to block visibility of the business by the traveling public is likewise not a taking.

In *Comer*, the Transportation Cabinet constructed a railroad underpass in Lexington. Although there was no physical taking of any portion of their properties, the property owners filed suit claiming they were entitled to

compensation for the denial of reasonable access to their business properties. Prior to the underpass being constructed, the property owners had direct access to the intersection of South Broadway and Scott Street; after the construction it required approximately a nine-tenths of a mile drive to reach their businesses from Broadway. *Comer*, 824 S.W.2d at 882. In denying the property owners' claims for compensation, the Court observed: "Neighborhoods, traffic patterns, safety requirements, and the like change over time, and governments must not always be required to compensate a property owner for every inconvenience or loss of business. The facts here present a case of noncompensable damage." *Id.* at 884.

In *Flynn*, a taking of property for constructing I-64 and the reconstruction of U.S. 227, left the property owners with the same frontage they always had, with this frontage now being on the old U.S. 227 which came to a dead-end at I-64. 428 S.W.2d at 25. It was undisputed that "this frontage no longer has the value it once had (particularly for commercial purposes) because the new U.S. 227 has diverted traffic away from the old road." *Id.*

The Court rejected the property owners' claims for inverse condemnation based on the impairment of the land for business purposes, explaining as follows:

> If appellants were entitled to compensation for this
> impairment of their land value, then every property
> owner on old U.S. 227, from which traffic has been
> diverted because of construction of the new road, would

> have a valid reverse condemnation claim against the Commonwealth even though none of their property was taken.
>
> We have consistently held that the devaluation of property resulting from the diversion of traffic from an old highway to a new highway does not constitute a taking which entitles the property owner to compensation. This problem is related to the one of reasonable access and we have likewise held that the limiting of the right of access by the Commonwealth (in the exercise of its police power) is not the taking of property for which the landowner is entitled to compensation.

*Id.* (citations omitted).

Similarly, in *DeRossette*, 156 S.W.2d at 166, the construction of an underpass and the creation of an embankment resulted in the road fronting property terminating in a cul-de-sac; while access to the public streets was preserved, it was undisputed that this change resulted in the property owner losing business tenants as traffic was diverted to the new highway. The Court disallowed the property owner's taking claim, relying heavily upon a Vermont case and quoting its reasoning as to why the diversion of traffic was not compensable as a taking:

> The buildings and lands [owned] will remain exactly as before establishment of the new route except that travel past the buildings will doubtless be diminished. But the State owes no duty to the [property owners] in regard to sending public travel past their door. Our trunk line highways are built and maintained to meet public necessity and convenience in travel and not for the enhancement of property of occasional land owners along the route. Benefits which come and go with changing

-10-

> currents of public travel are not matters in which any individual has any vested right against the judgment of those public officials whose duty it is to build and maintain these highways.

*Id.* at 169-70 (quoting *Nelson v. State Highway Bd.*, 110 Vt. 44, 1 A.2d 689, 693 (1938)).

As was recently explained in *August Properties, LLC*, 627 S.W.3d at 448, there is "a long line of cases holding that business losses are not compensable in condemnation actions." *See Commonwealth, Dep't of Highways v. Rogers*, 399 S.W.2d 706, 707 (Ky. 1965) (explaining "[w]e have, of course, held time and time again that business losses resulting from condemnation are not compensable"). Therefore, the fact that the diversion of a road resulted in business losses is not compensable. *See Commonwealth, Dep't of Highways v. Wooton*, 507 S.W.2d 451, 452-53 (Ky. 1974) (explaining the taking of land for the relocation of highways which diverted traffic away from "a restaurant building of substantial value" could not be considered part of the devaluation of the land which was entitled to compensation); *Commonwealth, Dep't of Highways v. York*, 390 S.W.2d 190, 192 (Ky. 1965) (explaining that "[r]egardless of how lucrative an individual's business is, if it depends upon the flow of traffic by his property, he is entitled to no recovery for loss of business or value of his property when that traffic is diverted along another route").

We are confident that these road diversion cases amply address Atkins's claims. Since all prior decisions have disallowed compensation for loss of access, we see no basis for compensation for loss of visibility. Likewise, Atkins has no right to alter property which he does not own to improve the public's ability to view Gary's Auto Sales.

Both parties discussed whether *Commonwealth, Department of Highways v. Strahan*, 431 S.W.2d 871, 873 (Ky. 1968), precludes compensation for impairment of a property's visibility. While *Strahan* did state that damages for visibility is a noncompensable factor in a takings action, and this is undoubtedly correct, we do not think this case is particularly helpful given the facts of the case. In *Strahan*, the Court explained that a change in grade of six-and-one-half feet for a property relative to the highway should not impact whether an anticipated filling station with an appropriate sign would attract travelers or that this change to visibility would be significant. *Id.* We believe that the loss of view from the traveling public is more analogous to a lack of potential customers traveling on a street that has ceased being a thoroughfare, than a somewhat diminished view caused by a change in elevation between a highway and a business.

Additionally, cases from other jurisdictions have also disallowed compensation for visual impairment, at least when there was no taking of a portion of the owner's property causing the resulting visual impairment. In *8,960 Square*

*Feet, More or Less v. State, Department of Transportation and Public Facilities*,

806 P.2d 843, 845-48 (Alaska 1991), a road construction project and elevation of

railroad tracks caused damage to the value of business properties fronting the

altered street, with the property owner claiming that it was entitled to

compensation caused by the change in visibility of its properties.  As to the

building of earth berms on adjoining property in a railroad's right of way, which

were built to elevate the railroad on a trestle over the street, we agree with the

Alaska Supreme Court's reasoning of why such a visual impairment is not

compensable:

> As a general matter, a landowner cannot recover from a
> neighboring landowner simply because he dislikes the
> use to which the second landowner put his property.
> Thus, a landowner could not recover from his neighbor
> just because the other had erected a building on his own
> property which blocked the view from the first owner's
> land, or the visibility of the first owner's land.  The only
> way to prevent a neighbor from constructing a building
> which would block one's view is to buy an easement of
> view.  The logical implication of this position is that a
> property owner has no right to an unobstructed line of
> vision to his property from anywhere off of his property,
> absent an easement of some sort.

*Id.* at 845-46 (footnotes and citation omitted).  Kentucky is in accord.  *See Morris*

*v. Roberson*, 137 Ky. 841, 127 S.W. 481, 482 (1910) (explaining "[i]nasmuch as

there was no stipulation in the deed forbidding the vendor to use the remainder of

his property in any way he chose, the vendee cannot complain that his vendor erected a shop upon his own lot which obstructed the vendee's view.")[2]  Atkins does not own KY 7 or the adjoining land on which the embankment was placed or have an easement for visibility; therefore, he does not have a right to demand his property remain visible from KY 7.

We do not adopt the Alaska Supreme Court's reasoning that a different result is warranted when the change in visibility was caused by a taking of a portion of the property to alter the street itself.  *8,960 Square Feet, More or Less*, 806 P.2d at 846-47.  That issue is not before us, and we have doubt that this is an appropriate basis for distinguishing outcomes and awarding damages.[3]

For a detailed discussion of the general case law regarding whether the loss of visibility of a business from a road is compensable pursuant to an

---

[2] We do not believe the general pronouncement in *Northio Theatres Corporation v. 226 Main St. Hotel Corporation*, 313 Ky. 329, 332, 231 S.W.2d 65, 67 (1950), that "an abutting property owner has an easement of view to and from the highway" requires otherwise.  In *Northio Theatres Corporation*, a hotel was located directly above a theatre and the installation of a new and larger theatre marque caused an obstruction that almost entirely blocked three hotel windows.  *Id.* at 330, 231 S.W.2d at 66.  That was a very different situation concerning the competing private interests of abutting property owners, not the government's right to alter its own streets.

[3] Kentucky cases, discussed *supra*, do not distinguish whether damages are allowed for a road diversion depending upon whether there was a physical taking of the owner's property.  Damages are disallowed whether the change in road access is presented as simply a factor in the damages claimed for the taking of physical land and the diminished value of the remaining parcel, or as a stand-alone claim.  Therefore, a future Court may agree with the alternative reasoning in *8,960 Square Feet, More or Less* that "since landowners have no right to traffic flow, they cannot have the right to be seen by traffic."  *Id.* at 847 (footnote omitted).

inverse condemnation action, *see Recovery of Damages for Loss of View or Visibility Resulting from Construction of Highway or Other Public Improvement*, 45 AM. JUR. 3D *Proof of Facts* 519 (originally published in 1998); Tracy A. Bateman, *Eminent domain: compensability of loss of visibility of owner's property*, 7 A.L.R. 5th 113 (originally published in 1992); Leslie A. Fields, *et al.*, *Visibility Loss or Diversion of Traffic?  Condemnation or Police Power in Visibility Impairment Cases*, 2007 A.L.I.-A.B.A. 261, 266-71.

Accordingly, we affirm the Elliott Circuit Court's orders granting summary judgment to the Transportation Cabinet.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Ned Pillersdorf
Prestonburg, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE:

William H. Fogle
Frankfort, Kentucky