**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**James S. PRIEST and Frances Priest, Wife, Appellees.**

Court of Appeals of Kentucky.

Nov. 20, 1964.

As Modified on Denial of Rehearing March 12, 1965.

Robert F. Matthews, Atty. Gen., Wm. A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Reed D. Anderson, Madisonville, Thomas L. Withers, Henderson, for appellant.

Wm. M. Deep, Henderson, for appellees.

DAVIS, Commissioner.

The appellant Department of Highways seeks reversal of the judgment entered in this condemnation suit; the judgment is for total award of $17,550, pursuant to the jury's verdict.

The claimed errors upon which appellant relies are: (1) The damages are so excessive as to be palpably contrary to the evidence, (2) prejudicial errors were committed in admission of evidence, and (3) the trial court failed to instruct the jury properly.

The property involved in this proceeding is situated on the east side of US Highway 41, just south of Henderson. (We are told in brief for appellees that since the trial the property has been incorporated into the city limits of Henderson.) It is agreed by the parties that the land has potential as commercial property, and that

such commercial use is the highest and best use for it.

Before the taking the lot, rectangular in shape, had 425 feet frontage on existing US Highway 41, with a depth of 295 feet. By reason of transforming US Highway 41 from a two-lane highway to a divided four-lane highway with median strip, the instant taking became necessary. The portion taken consists of a strip from the entire front, having depth of 61 feet. The lot was unimproved at the time of taking; it was served with one entranceway to the existing highway. After the taking the lot will continue to have frontage along reconstructed US Highway 41 for exactly the same width of 425 feet but its depth is reduced from 295 to 234 feet. An entranceway comparable to the one in use at time of taking is provided incident to the reconstruction. The reconstructed highway is not a limited access road.

Prior to the taking the lot lay virtually at a grade level with the existing highway. While the situation after the taking will place the lot at grade also, there is evidence that the lot slopes upwardly as it continues to the east, so that there may be some grading required by reason of the taking.

For the appellant two appraisal witnesses gave evidence as follows:

| Before Value | After Value | Difference |
|---|---|---|
| $45,750 | $41,000 | $4,750 |
| 42,500 | 37,315 | 5,185 |

Four witnesses for the appellees gave the following evidence:

| Before Value | After Value | Difference |
|---|---|---|
| $74,375 | $42,500 | $31,875 |
| 63,750 | 42,500 | 21,250 |
| 63,750 | 42,500 | 21,250 |
| 68,000 | 42,500 | 25,500 |

It is observed that each of the witnesses for appellees attributed an "after" market value of $100 per front foot for the land remaining after the taking. One prime factor upon which the witnesses for appellees computed reduced "after" market value was their belief that the lessening of available parking area substantially decreases the attractiveness of the property for commercial enterprises.

The trial court excluded evidence relating to the prospective use of the lot for specific businesses, such as bowling alleys, motels, shopping centers and the like. This evidence may have been proper, but no avowal was offered. CR 43.10. No effort was made to show that the remaining lot would be inadequate for such enterprises. However, the court permitted testimony that availability for parking space is a factor affecting market value for commercial purposes. No witness presented any evidence of knowledge or experience as to the extent of such value. Indeed, there is a showing that the remaining depth of 234 feet is quite ample for a service station. In fact, a comparable sale referred to in the evidence involved purchase of a lot for service station use with dimensions of 200 feet frontage and 200 feet depth. One witness asserted that 86 parking spaces would be lost, but furnished no information as to how he had reached the conclusion.

■■■ It is our view that when a landowner asserts a value factor which is outside the knowledge of ordinarily experienced persons, it is incumbent upon the party to adduce affirmative evidence substantiating that factor. We recognize that under certain circumstances the availability of space for parking automobiles may be a critical element in the market value of property. On the other hand, it is equally certain that some commercial enterprises are comparatively disinterested in the availability of parking space. It is apparent that the total amount of square feet in an area does not control the amount of parking space involved—for example, a strip of ground two feet wide and 425 feet long would not serve as parking space for one car. Thus, it seems to us that the litigant seeking to prove special value by virtue of a special factor, such as the one under consideration, must present tangible

evidence in support of such a claim. In this case no such tangible evidence appears. The bare opinions of the appraisal witnesses, while admissible, lack sufficient probative value to support the appraisals to which they testify. Com., Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472.

In 4 Nichols, Eminent Domain, 3rd Ed., Sec. 14.21 [2], it is said:

"The burden of proof is upon the owner to show that the taking of part of his property will cause damage to the remainder, and unless he shows such damage by affirmative evidence, furnishing a basis from which a reasonable and proper estimate of the amount thereof can be made, his compensation will be limited to the value of the land taken."

■ Here the appellees have not sustained the burden of furnishing adequate affirmative evidence in support of the claim that loss of possible parking space could reasonably justify the inordinate reduction of market value.

■■ Although we are cognizant of the salutary precept that the determination of the amount of damages is primarily the province of a properly instructed jury, we remain impressed with our responsibility to upset any verdict in which the jury's award appears so excessive as to strike us as being unreasonable, and such as to show that the jury acted as the result of passion, partiality or prejudice. United Fuel Gas Co. v. Mauk, Ky., 302 S.W.2d 368; United Fuel Gas Co. v. Mauk, Ky., 325 S.W.2d 339; Com., Dept. of Highways v. Lyons, Ky., 364 S.W.2d 336; Com., Dept. of Highways v. Rankin, Ky., 346 S.W.2d 714; Com., Dept. of Highways v. Tyree, Ky., 365 S.W. 2d 472.

■ Appellant contends that it was error for the trial court to permit references by the witnesses to the specific types of businesses which might use the lot. The appellant recognizes the general rule announced in Bowling Green-Warren County Airport Bd. v. Long, Ky., 364 S.W.2d 167, and Com., Dept. of Highways v. Vincent, Ky., 357 S.W.2d 678, namely, that it is proper to show the land's adaptability to particular purposes provided there is a further showing of a reasonable expectation that in the near future the land could be so used. It is urged, however, that there is an absence of evidence reflecting the owner's reasonable expectation for any of the particular uses in the near future. As previously mentioned, the trial court did sustain objections appellant made to such evidence, although in at least one instance there was not a decisive ruling by the court on such an objection. Appellees, in brief, seem to concede the point that such evidence is not appropriate, but counter with the argument that appellant cannot complain because its objections were sustained. We are of the opinion that it is proper for the evidence to reflect all uses for which the property is suitable and adaptable, having regard to existing market demands of the community, or such as may be reasonably expected in the immediate future. However, the purpose for admission of evidence of this type is to show market demand, thus affecting market value. It is not proper to present such evidence with a view to showing loss of future profits to the owner because a particular business may no longer be placed upon the remaining land. Cf. Empire Dist. Electric Co. v. Johnston, 241 Mo.App. 759, 268 S.W.2d 78; 5 Nichols, Eminent Domain, 3rd Ed., Sec. 18.11.

■ We believe that the matter of permitting evidence of the land's adaptability for specific uses, before the taking, should be addressed to the question of market value. For example, it would be proper to show that a parcel of land has before taking adaptability for uses A, B, C, and D—and that by reason thereof its market value is "X" dollars; that after the taking it has lost its adaptability to these uses, but is adaptable to uses E, F, and G, with a reduced market value of "Y" dollars. Such

a showing would embrace such matters as loss of potential parking space or loss of adequate area to accommodate a certain business, et cetera. Even if there is an absence of showing that the taking has made the remaining land less adaptable, the adaptability for specific uses is relevant as bearing on "before" and "after" values.

There should be no reference to the time required to complete the highway construction. It was error to permit inquiry of the engineer as to how long it would be before the project is completed. Com., Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844, 859; Com., Dept. of Highways v. Jackson, Ky., 302 S.W.2d 373.

It was not proper to attempt to impeach one of appellant's appraisal witnesses by inquiring whether the present case was the first case in which he had given evidence of enhancement. In the first place, this trial took place shortly after our decision in Com., Dept. of Highways v. Sherrod, supra, where it was first clearly enunciated that enhancement should be considered. Prior to that decision, evidence as to enhancement was not admissible. Moreover, the evidence was not relevant, since it had to do with separate parcels in other proceedings and left open whether any similarity existed. It was not a prior inconsistent statement.

Appellant offered instructions by which the jury would have been required to report its finding of the "before" value and the "after" value. The court declined to give the tendered instruction, but instructed the jury in the form set out in Stanley's Instructions to Juries, Vol. 1, Sec. 359a. The form was published just following the Sherrod opinion, supra. It is our view that the better form of instruction is one patterned upon the form offered by appellant. When the jury reports its determination of "before" and "after" values, the litigants and the court are apprised of the jury's conclusions on these two vital points, and the propriety of the verdict as measured against the evidence is more readily determined. The appellee suggests that this form will require the jury to reach its unanimous verdict on two different figures, but there is no merit in that position. Manifestly, in order for the jury to reach a verdict based upon its findings as to the difference in the "before" and "after" values it must first agree as to what those two values are. On another trial the court will instruct the jury:

"The jury will find from the evidence, and state in your verdict:

"A. The fair market value of the defendant's property as a whole immediately before the taking of the parcel by the plaintiff, as of January 22, 1962; and

"B. The fair market value of so much of the tract as remains immediately after the taking. In determining the value after the taking you will take into consideration any enhancement in the value of the remaining property that you believe from the evidence is attributable to the advantageous relation of the property to the new highway, as distinguished from any general enhancement of values in the community to property not even abutting on the highway.

"C. The difference between A and B, which sum you should award as compensation for the property taken."

The instructions will include the definition of market value and the requirement for unanimous verdict as given at the first trial.

In view of the fact that the instruction as given in this case did submit the question of the difference in the "before" and "after" values, as prescribed by our decision in the Sherrod case, supra, we announce herein that from the effective date of this opinion the suggested form shall be used; but this opinion shall not be considered to affect the validity of instruc-

tions given in other form prior to the effective date thereof. It should be observed that the phraseology in Section B. of the instruction as to enhancement should not be employed unless substantial evidence of enhancement presents an issue as to that phase of the case.

In the case at hand we have used January 22, 1962, in the prepared instruction because the litigants tried the case upon the premise that that was the pertinent date. Nothing herein is intended to impair the effect of our decision in Com., Dept. of Highways v. Wood, Ky., 380 S.W.2d 73. The appropriate "taking" date is to be ascertained as prescribed in the Wood opinion, supra.

The judgment is reversed for proceedings consistent with this opinion.

PALMORE, J., not sitting.