**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**Morris B. VAUGHN et al., Appellees.**

Court of Appeals of Kentucky.

May 7, 1965.

to the appraisal of commissioners appointed by the county court for that purpose. On the trial the Circuit Court judgment for $12,625 was entered pursuant to the verdict—$9,500 for the land taken and a temporary easement, and $3,125 as damage to the remainder. The Department's sole appraisal witness had appraised the land taken at $7,200 with no damage to the remainder. The frontage along the highway (U. S. 41) was the same after the taking as it was before.

The appellees' undeveloped land fronted approximately 630 feet on the west side of U. S. 41 and extended westwardly 593 feet on the northern side and 383 feet on the southern side, the remaining or western line extended 705 feet along State Highway 136. A high pressure gas line on a 30-foot easement ran southeasterly diagonally across the land, from north to south, cutting the southern (383-foot) line in two, with 202.5 feet east of the pipeline to U. S. 41 and 108.6 feet west of the pipeline to State Highway 136. The condemnation took 71 feet from the 202.5-foot portion of the line east of the pipeline which left a shallow 116 feet on this southern boundary from U. S. 41 to the nearer or eastern side of the easement, making that area of the tract too shallow for commercial purposes according to the landowners. The landowners had graded the area between the pipeline and U. S. 41 to prepare it for commercial development, and as long ago as 1955 had filed a subdivision plat of lots in the Henderson County clerk's office covering the area between the pipeline easement and State Highway 136. This division of the property by the pipeline into a portion intended for residential development and a portion intended for commercial usage was a factor which was considered in appraising the land.

The Department took 37,905 square feet of land along U. S. 41 or .87 acres. Along this frontage, 71 feet in depth was taken for the south 175 feet and 56 feet in depth along the northern 455 feet, the difference being caused by an offset in the prior right

---

John B. Breckinridge, Atty. Gen., Wm. A. Lamkin, Jr., Asst. Atty. Gen., George S. Clay, Henderson, Dandridge F. Walton, Madisonville, for appellant.

Leonard T. Mitchell, L. B. Lawton, Henderson, for appellees.

MILLIKEN, Judge.

This highway condemnation proceeding was tried before Com., Department of Highways v. Sherrod (1963), Ky., 367 S. W.2d 844, and involves the taking of a strip of land for the widening of U. S. 41 about a mile south of the City of Henderson. Both parties had appealed to the Circuit Court from a county court judgment awarding the landowners $9,400 pursuant

of way. As heretofore pointed out, the greater depth was taken from the shorter or shallower side of the tract. The Department contends that the judgment was excessive and was not based upon adequate evidence.

In determining whether the judgment is excessive and whether it is based upon adequate evidence, the qualifications of the landowners' witnesses as well as as what they say must be considered. One of the owners, Morris B. Vaughn, was in the insurance business, had taught school, had bought and sold various pieces of property in the county and had appraised property for the State Highway Department and for the Municipal Housing Project. The other owner, B. U. Barnett, had bought and sold more than ten parcels of real estate in the county, so necessarily had acquired some knowledge of property values. Another witness for the landowners had been in the real estate and insurance business in the county for fifteen years and had appraised thousands of pieces of real estate in that area during the period. Another witness had been a real estate broker in the county for eighteen years, had developed a number of subdivisions, and had made appraisals for the Department of Highways, local banks, large national corporations and the RFC. It would be difficult to find an array of witnesses better qualified by experience to appraise real estate in that community.

Without encumbering this opinion with detailed data, suffice it to say that the total amount of the judgment is approximately two-thirds of the amount of estimated damage of the lowest of the landowners' appraisals and about one-half that of the others. Only the $7,200 estimate of the Department's sole appraisal was lower, and that made no allowance whatsoever for damage to the remainder. The gist of the testimony supports the landowners' contention that the portion of the land along U. S. 41 is suitable for commercial purposes and should be so considered in appraising it

because of the trend of commercial development along the highway. A service station is being built across the road from the property, and an implement sales business is not very far away.

The Department contends that certain comparable sales mentioned by the condemnees' witnesses are not comparable. Comparability is a variable which ordinarily is better left to local authorities to apply to local conditions. An analogy is really no proof of anything; it is a guide and no more. Fortunately, this Court has recognized that the valuation placed upon property by competent witnesses is sufficient in itself without reference to genuinely comparable sales which so often are not available. Com., Department of Highways v. Prather (1963), Ky., 369 S.W.2d 118; Com., Department of Highways v. Mann (1965), 387 S.W.2d 848, 850.

The most serious question raised by the Department in our opinion pertains to the $3,125 allowed for damage to the remainder. The Department's sole appraiser allowed nothing. As we have heretofore pointed out the commercial portion of this tract was disproportionately reduced on its shallower side because it was there that the taking was 71 feet in depth instead of the 56 feet taken along the greater portion of the frontage. The condemnees' appraisers opined that this made the southerly portion of the commercial area unsuited for most commercial purposes because parking space would not be available on account of the lack of depth of the lot. In Com., Department of Highways v. Priest (1965), Ky., 387 S.W.2d 302, we concluded that was not a proper factor to consider unless it is shown that it directly affects market value.

However, we think the present factual situation justifies distinguishing that case from this, because here the southerly portion of the commercial area is left palpably shallow by the taking while in the Priest case an adequate space remained for most commercial purposes. We realize

that some degree of parking space is necessary and that the highway itself is no place to park. The allowance for damage to the remainder in the case at bar was approximately one-half of the lowest estimate of the landowners' witnesses and, since we believe there obviously was damage to the remainder, we conclude further that the amount allowed was not unreasonable.

Because of the difficulty of finding suitable standards or precedents for the trial of highway condemnations, this Court deviated from the common law principle of deciding one case at a time and delivered a text for general guidance of practitioners in Com., Department of Highways v. Sherrod (1963), Ky., 367 S.W.2d 844, rendered subsequent to the trial of the present case. The difficulty of applying general propositions (so ably stated by Commissioner Cullen in Sherrod) to particular situations led Justice Holmes to wryly observe in a letter to Pollock in 1920, "I daresay that I have worked off my fundamental formula on you that the chief end of man is to frame general propositions and that no general proposition is worth a damn." The general propositions formulated in Sherrod have proved most helpful, but they do not offer a magic formula in these cases. We still must form value-judgments of our own in applying the general propositions, and counsel, courts and juries have always had to make such value-judgments and always will have to make them. We may question the amount of a jury award, but we should not intrude on the jury's constitutional prerogative (Const., Sec. 242) to make it unless the amount allowed is shockingly excessive or obviously based upon improper factors. In the present case we think there was evidence to sustain the award for the land actually taken, and that the award in that respect was liberal but not shockingly so. Since damage to the remainder as such was allowable separately by our pre-Sherrod procedure, it necessarily was allowable on the facts of the present case.

In nearly all litigation errors occur which blemish the record and they did here, but they were not dwelt upon or pushed to the point where they obviously prejudiced or misled the jury. The reasonableness of the judgment is the dominant question, and not the tangential errors or miscues which may have occurred during the trial. Trial errors are persuasive only when they strongly indicate that the verdict is unreasonable or is based upon noncompensable factors.

The jury here reached a reasonable verdict on the opinion testimony of qualified appraisers. Had we been the jury, we might have given less. But we were not members of the jury, and we will not now act as if we were.

The judgment is affirmed.

PALMORE, J., not sitting.