### COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

### Howard E. FRASIER et al., Appellees.

Court of Appeals of Kentucky.

Jan. 17, 1969.

John B. Breckinridge, Atty. Gen., Don Duff, Acting Gen. Counsel, Dept. of Highways, Frankfort, Charles W. Huddleston, Bowling Green, for appellant.

Marion Vance, Glasgow, for appellees.

EDWARD P. HILL, Judge.

The appeal is from a judgment for $15,000 for 0.18 of an acre taken from the front of appellees' 6.75-acre lot on which was located a tobacco warehouse 335 feet wide and 526 feet long. The improvements were not taken or disturbed, although the grade to two of the approaches to the entrance was increased, and appellees contend the taking included 30 to 40 parking spaces in front of the warehouse.

Appellant not only argues that the amount of the verdict and judgment is excessive, but that appellees' evidence was based in part on an improper factor in that their witnesses took into account the loss of parking space they used and enjoyed before the taking that was lost by the taking. Appellant cites Commonwealth, Department of Highways v. Smith, Ky., 413 S.W.2d 72 (1967), in support of this argument. The parking space involved in Smith was on the highway right-of-way. This court, we continue to believe, properly decided in Smith that parking on the highway right-of-way was not a proper factor in determining the before and after values

in highway condemnation cases. But this is not such a case. The parking space in the instant case was on appellees' own land.

It may be observed before referring to the facts that the county court commissioners awarded appellees $5000, and from the judgment entered thereon both parties appealed.

Two witnesses testified for appellant; seven testified on behalf of appellees. Appellant's witnesses gave the following before and after values and differences:

|  | Before | After | Difference |
|---|---|---|---|
| McCrocklin | $269,725 | $269,055 | $670 |
| Bishop | 256,150 | 255,500 | 650 |

Appellees' seven witnesses testified to before values ranging from $250,000 up to $350,000 and after values ranging from $200,000 to $300,000. Their lowest difference was $31,500, and the highest difference between before and after values by any witness was $100,000, which was given by the appellee Howard Frasier. No other witness for appellees fixed the difference under $31,500.

The verdict fixed the before value at $267,450, the after value at $252,450, for a difference of $15,000.

In addition to the loss of slightly less than one-fifth acre of land, appellees undertake to justify the verdict on two other theories: First, that the loss of the land resulted in loss of parking facilities (appellees pointed out that the land taken "was so strategically involved in the use of the warehouse" that its taking "materially affected the value" of their property); and second, that the taking resulted in inconvenience and hazards in getting into the central entrance of the building due to the increase of the grade of the approach thereto (from 13.77 to 16 percent), which factor also affected the market value.

Appellees' property is situated on the north side of Kentucky Highway 80 and U. S. 68, a highway running in a general east-west direction. It is one and three-fourths miles from the courthouse in Glasgow, the county seat of Barren County. The frame tobacco warehouse is provided with three entrances on the highway. They are referred to in this record as the southeast entrance, the middle or central entrance, and the southwest entrance. The central entrance was designed and used exclusively for the entrance of trucks loaded with tobacco desiring to unload. The other entrances were for trucks removing tobacco after sale.

Before the taking, the distance from the nearest edge of the hard surface of the highway to the southwest corner of appellees' tobacco warehouse was 99 feet; after construction it was 85 feet. At the center it was 109 feet before and 105 feet after. At the southeast entrance it was 121½ feet away before and the same distance after.

The right-of-way proper, of course, extends much closer to the warehouse. Here are the distances the right-of-way extended with reference to the building before and after construction: At the southwest corner it was 78 feet before and 47 feet after; at the center of the building it was 88 feet away before and 67 feet after; and at the southeast corner it was 100 feet before and 88 feet after.

The highway in front of their property before construction, or reconstruction, had a hard surface 18 feet wide with a gravel shoulder averaging 3 feet in width. The hard surface after construction is 24 feet wide with "dense-grade" shoulders 10 feet wide.

The elevation of the hard surface of the new road at its center entrance is four

inches lower than the old road was at that point. But at the outer edge of construction nearest appellees' property, the shoulder of the road is four feet lower than it was prior to construction.

The use and availability of this strategic parking area at the front of their building is one of appellees' main grounds for sustaining the judgment. The other ground, as noted above, is the increase of the grade at the central entrance from 13.77 to 16 percent. They contend it is sometimes difficult and hazardous for loaded tobacco trucks to enter the central entrance over a grade so steep. The building was designed and constructed for unloading of tobacco through the central entrance. The two outer entrances were designed for trucks removing tobacco after sale. The witnesses for appellees testified on this point sufficiently to comply with Commonwealth, Department of Highways v. Priest, Ky., 387 S.W.2d 302.

On a closer look into the evidence, including photograph showing the premises before and after the taking, our impression is that the verdict is not excessive.

Two of appellees' witnesses were competitors in the tobacco warehouse business. They were experienced and successful businessmen. Another witness for appellees was a reputable engineer with former experience in the Engineering Division, Kentucky Department of Highways. Other witnesses were local licensed realtors.

Appellees' property before the taking was valuable property as was indicated by the State's two witnesses; the lowest before value fixed by them was $256,150. Really there is no great controversy as to before value. In fact one of appellees' witnesses testified the before value was less than that fixed by appellant's witnesses. So it must be concluded by all that appellees' property was valuable before the taking. The question is how much of that valuation has been lost by the circumstances of the taking?

The property was designed for, and its highest and best use was and still is, a tobacco warehouse. Its annual period of operation is only three months during the winter when weather conditions are more likely to affect driving conditions which may add to the inconvenience and hazards of steep approaches.

There is no escape from the conclusion that the taking of land in this case increased the grade of the central entrance and the southwest entrance (the former substantially—from 13.77 to 16 percent), all in the face of standard regulations of the Department of Highways to limit approaches to 8 percent with a 7 percent limit preferred. This is a regulation based on safety factors. Appellees urge upon this court that safety factors and inconvenience have operated to decrease the market value of their property. Apparently the jury agreed. We find it difficult to disagree.

The appellant has not shown or attempted to prove that appellees can minimize their loss by rearrangement of the facilities so another entrance may be used for unloading, thereby reducing inconvenience and hazards of entrance. Neither is there evidence that appellees can lower the percentage of the grade at the central entrance.

While the judgment may be liberal, we cannot say at first blush it is excessive.

The judgment is affirmed.

All concur.